**EMPIRE TRAILS, Inc., v. UNITED STATES et al.**

Civil Action No. 13552.

District Court of the United States for the District of Columbia.

March 19, 1942.

Roberts & McInnis and Edgar Turlington, both of Washington, D. C., for plaintiff.

Irvin L. Stephenson, of Washington, D. C., for the United States.

Nelson Thomas, David K. Knowlton, Jack R. Turney, Jr., all of Washington, D. C., Earl R. Lewis, of St. Clairsville, Ohio, and

Gilbert Nurick, of Harrisburg, Pa., for Interstate Commerce Commission.

Before GRONER and VINSON, Circuit Judges, and WHEAT, District Judge.

PER CURIAM.

This is a suit against the United States and the Interstate Commerce Commission to set aside and annul an order of the Commission denying an application for a certificate of convenience and necessity under Sec. 207(a) of the Motor Carrier Act, 1935, 49 U.S.C.A. § 307(a).[1]

Plaintiff is an Illinois corporation engaged in the transportation of bus passengers between Chicago and Pittsburgh, through Columbus. Its predecessor, Lincoln Trails System, Inc., had in February, 1936, filed with the Commission three route applications for certificates of public convenience and necessity. Plaintiff in July, 1941, succeeded to the rights of Lincoln. The Commission granted two of the applications, but denied one covering operations between Columbus and Pittsburgh. Only the latter is involved in this proceeding. Temporary continuation of operation was authorized pending review. Operations over this route were begun by plaintiff's predecessor on August 17, 1935, subsequent to the so-called "grandfather" date of June 1, 1935, but before the Motor Carrier Act became effective on October 15, 1935. Plaintiff insists that the continuation of the service is required by the present or future public convenience and necessity. Upon receipt of the applications, the Commission instituted a proceeding designated Lincoln Trails System, Inc., Common Carrier Application, Docket No. MC 74791. Red Star Way, Inc., White Star Lines, Inc., and Pennsylvania Greyhound Lines, Inc., were, without objection, allowed to intervene in opposition. The Commission assigned the proceeding re Columbus-Pittsburgh to Joint Board No. 59, made up under Sec. 205 of the Motor Carrier Act of representatives of the States of Ohio, West Virginia, and Pennsylvania, and the Commission, after two hearings, the first in 1937, the second in 1940, denied the certificate. All of this happened prior to the time plaintiff acquired the property and rights of Lincoln.

Plaintiff's contentions here are (1) that its predecessor was not accorded a fair hearing before the Board and that the subsequent finding of the Commission, of lack of convenience and necessity, is not supported by substantial evidence; and (2) that the action of the Commission in denying a rehearing to plaintiff, after it came on the scene, was arbitrary and unreasonable.

First. When the Commission in February, 1936, received Lincoln Trails' three applications, it referred each to a separate Board. The "grandfather" application involving the operation between Chicago and Columbus went to Joint Board No. 58; that involving operation between Logansport, Indiana, and Van Wert, Ohio, to Joint Board No. 60; and that for operation between Columbus and Pittsburgh, as we have seen, to Joint Board No. 59. The Chicago-Columbus application and the Logansport-Van Wert application were favorably reported, and were later authorized by the Commission. When the Columbus-Pittsburgh application was reported adversely, exceptions were filed, and the Commission recommitted the application to the Board for continued hearings. The Board as originally constituted consisted of Messrs. Gunlavy of Ohio, Driscoll of Pennsylvania, and Smith of West Virginia. Subsequently, Mr. Sprankle was substituted for Mr. Gunlavy, and the hearing now in question was scheduled to be held in Pittsburgh November 15, 1938. On that day no member of the Board appeared, but the Commission's examiner was present as the representative of the Commission and inquired of the parties, applicant and protestants, whether there was objection to his presiding and receiving the evidence. Counsel for all stated that there was no objection, and the taking of testimony proceeded. By consent and order, the hearing was resumed on April 27, 1939. At this hearing Mr. Sprankle was the only Board member in attendance. The taking of evidence proceeded, and plaintiff's witnesses testified and produced certain documentary evidence, which was received by the examiner and made part of the record. Thereafter the transcript and brief of counsel were submitted to the whole Board and in due time a recommendation against granting the application was signed by each member and filed with the Commission.

Plaintiff's first ground of complaint is that the recommended order was invalid, because of the absence at the hearing of

---

[1] 28 U.S.C.A. § 41(28), 43–48; 49 U.S.C.A. § 305(g).

members of the Board, the exclusion of testimony, and certain procedural rulings by the Board member who attended the later hearing. Based on this assignment, plaintiff insists that the action of the Commission in accepting the report was prejudicial error. It should be noted, as we have previously pointed out, that the matters of which plaintiff now complains all happened prior to its purchase of Lincoln's rights, and plaintiff is, therefore, in the embarrassing position of insisting upon alleged errors which its predecessor never at any time brought to the attention of the Commission. But the Commission, in its answer, says that in making its own report, it "considered and weighed carefully, in the light of its own knowledge and experience each fact, circumstance and condition on behalf of the parties to said proceeding". We assume from this that the Commission acted independently of the Board's rulings and considered the case on its merits without regard to the Board's recommendation. Indeed, the Commission says as much as this in its report. In passing on the merits, the Commission said in its first report and repeated substantially in its second, as follows:

"There are, in addition to applicant, five common carriers of passengers by motor vehicle conducting through operations between Columbus and Pittsburgh and three additional common carriers of passengers by motor vehicle in operation between various points in this territory whose combined lines make up a through route between those points. Witnesses for protestants testified that all but one of these carriers were in operation on June 1, 1935, and have filed applications for certificates under the "grandfather" clause. These protestants operate a total of 16 round trips daily between Columbus and Pittsburgh, several of which are over the same route on which applicant now operates, while others are over routes embracing a large part of applicant's route. These schedules of protestants are operated, as a rule, with a substantial number of vacant seats on each trip. These protestant motor carriers operate modern well-maintained equipment and each of them is financially able and ready and willing to secure additional equipment, if any should be needed, and to increase their service to meet any additional needs of the traveling public. The Pennsylvania Railroad Company and the Baltimore and Ohio Railroad Company operate several passenger trains daily between Chicago, Columbus, and Pittsburgh, and intermediate points, including Zanesville and Cambridge, Ohio, Wheeling, W. Va., and Washington, Pa.

\* \* \* \* \* \*

"Applicant has made no showing that the frequent schedules available to the traveling public between Columbus and Pittsburgh over protestants' lines are inadequate in any respect. The failure of applicant to obtain satisfactory interchange arrangements at Columbus on eastbound traffic affords no basis for a finding that continuance of applicant's service east of Columbus is required by the public convenience and necessity. Under section 216 (a) of the act it is the duty of every common carrier of passengers by motor vehicle to establish reasonable through rates with other such common carriers and to establish, observe, and enforce just and reasonable joint fares and charges, and just and reasonable regulations and practices relating to the issuance, form and substance of tickets. Protestants express their intention to comply strictly with these requirements of the act. In the event that protestants, or other motor carriers serving Columbus, fail or refuse to establish with applicant reasonable through routes and just and reasonable joint rates and regulations and practices, the matter may be brought to our attention in an appropriate proceeding."

In the light of what has just been said, it is clear plaintiff's insistence, that its predecessor was not accorded a fair hearing by the Commission, is without merit. It is true, as to the Board hearings, that the record shows the absence of all members at the first hearing and the presence of only one member at the second. Considered alone in this aspect, it is obvious that the reference to the Board as a fact finding agency was little less than a farce. But plaintiff is in no position now to complain of this, for with the opportunity at hand to object, its predecessor declined to ask for a postponement and elected to proceed. Not only is this conceded, but it clearly appears that opportunity was afforded plaintiff's predecessor, by the examiner who exercised the same powers as the Board, to make out its case and that its evidence, including the alleged rejected evidence, was received and considered by the Commission. In this view, it is of no consequence that the

Board may have been derelict, as plaintiff insists, in the discharge of its functions, for such dereliction, if it existed, is shown not to have prejudiced its case. The Commission, with the whole of plaintiff's case before it, wrote a new report, finding a lack of showing of necessity, and on this finding, rather than the Board's, denied the certificate.

But we are by no means prepared to say that the Board failed to discharge its duties. Plaintiff's predecessor presented fully and freely its evidence to the examiner and the one Board member who appeared. All of its evidence was later considered by the whole Board, and the recommendation which was concurred in by all three members was, we must assume, made in the light of all the evidence. This, in our opinion, was a sufficient compliance with statutory requirements. See Cupples Co. Manufacturers v. National Labor Relations Board, 8 Cir., 103 F.2d 953, 957; Morgan v. United States, 298 U.S. 468, 478, 56 S.Ct. 906, 80 L.Ed. 1288; Woodruff v. United States, D.C., 40 F. Supp. 949. Nor do we find anything in Holiday v. Johnston, 313 U.S. 342, 550, 61 S.Ct. 1015, 85 L.Ed. 1392, to the contrary. That was a case arising under the habeas corpus statute, and the principles applicable there and here are wholly different. In the present case, the statute empowers the Commission alone to grant the application. The Board, together with the examiner, is only the conduit through which the Commission receives the facts on which to base its action. And, it is perfectly clear, plaintiff's predecessor was accorded opportunity to present its facts and fully availed of the opportunity, for no new facts of consequence were offered on the trial in this court. That a part of the Board heard them as on depositions does not affect the validity of the proceeding, and that is especially true where, as in this case, no objection was made until after the question was finally decided by the Commission.

Second. Was plaintiff's petition for reconsideration wrongfully denied? Plaintiff says it was, because, as it claims, the Commission failed to give considera-tion to the fact that its service was an essential link in the independent national motorbus system, and also because the Commission gave no effect to the prima facie presumption of public need arising out of successful operation for a period of years. Plaintiff's evidence shows that since it began its service between Columbus and Pittsburgh its schedule has been doubled in response to the public demand and its profit for the period, January 1 to October 31, 1941, or ten months, increased to approximately $4,000. But this proves only that its present operation is being successfully maintained. It does not prove that its continuance is necessary in the public convenience, either on the theory that its service is an essential link in the national system or on the other theory that, having got out of the red into the black in operating income, it has thereby demonstrated a public need for such service. And the Commission rejected both reasons, on the ground that there are now "five common carriers of passengers by motor vehicle conducting through operations between Columbus and Pittsburgh and three additional common carriers of passengers by motor vehicle in operation between various points in this territory whose combined lines make up a through route between these points". All but one of these competing lines were in operation prior to January 1, 1935, and were, therefore, operating with certificates granted under the "grandfather" clause. The total number of round trips between Columbus and Pittsburgh by these companies, the Commission concluded, was all that is required in the public interest. This, it seems to us, is a satisfactory answer—well supported by evidence—to plaintiff's application for leave to establish a new service. Virginian R. Co. v. United States, 272 U.S. 658, 47 S.Ct. 222, 71 L.Ed. 463; Interstate Com. Comm. v. Louisville & N. R. Co., 227 U.S. 88, 33 S.Ct. 185, 57 L.Ed. 431; Merchants Warehouse Co. v. United States, 283 U.S. 501, 51 S.Ct. 505, 75 L.Ed. 1227.

In the circumstances, we have no other option than to dismiss the complaint, and an order according will follow.