**BONDURANT v. UNITED STATES et al.**

District Court, M. D. North Carolina.

July 7, 1943.

Harold G. Hernly, James W. Wrape, and Charles Hudson, Jr., all of Memphis, Tenn., for plaintiff.

Edward Dumbauld, Sp. Asst. to the Atty. Gen., Tom C. Clark, Asst. Atty. Gen., Carlisle Higgins, U. S. Atty., and Bryce R. Holt, Asst. U.S. Atty., both of Greensboro,

N. C., and Daniel W. Knowlton, Chief Counsel, and Allen Crenshaw, Atty., Interstate Commerce Commission, both of Washington, D. C., for defendants.

Before PARKER, Circuit Judge, and WEBB, and HAYES, District Judges.

PARKER, Circuit Judge.

This is a suit under 28 U.S.C.A. § 41(28) to enjoin and set aside an order of the Interstate Commerce Commission made upon an application for a certificate under the "grandfather" clause of section 206(a) of the Motor Carrier Act of 1935, 49 U.S.C.A. § 306(a). See 24 M.C.C. 174, 179–181. Interlocutory injunction has been applied for and a special statutory court of three judges has been convened pursuant to section 47 of Title 28 of the United States Code Annotated. At the hearing upon the application for interlocutory injunction, the evidence heard before the Commission has been introduced and the case has been submitted for final decree.

The plaintiff is the successor of Textile Truckers, Incorporated, which in turn was the successor of W. G. Bondurant, doing business as Bondurant Transfer Co., of Mount Airy, N. C., who began operations as a carrier by motor vehicle in the year 1932. In 1934 W. G. Bondurant transferred the business to Textile Truckers, Inc., and the business was being conducted by that corporation on June 1, 1935. Application for certificate under the "grandfather" clause was duly filed by the corporation within the time allowed; and subsequently the Commission heard a joint petition to transfer to plaintiff the operating rights claimed under the "grandfather" application and ruled that no approval thereof by the Commission was necessary to the validity of the transfer. We entertain no doubt but that the effect of the filing of this joint application was to transfer to plaintiff the operating rights to which it related, and contention to the contrary seems little short of frivolous. The Commission does not join in such contention, but recognizes that plaintiff has succeeded to any rights under the grandfather clause that Textile Truckers, Inc., may have had.

The operations upon which plaintiff bases the claim to rights under the "grandfather" clause were commenced in 1932. They have at all times been confined to transporting rayon yarn from manufacturer to spinner and returning empty containers to the manufacturer. Prior to June 1, 1935, yarn had been transported from seven points in the states of Virginia, West Virginia, Pennsylvania and Tennessee to two points in North Carolina and nowhere else. Plaintiff's predecessors held themselves out as willing to transport to any points in the southeastern territory and had actively solicited business to a large number of points, but prior to June 1, 1935, had received no business to any points except the two in North Carolina. The facts are correctly stated in the report of the Commission as follows:

"No. MC-29624.—W. G. Bondurant, doing business as Bondurant Transfer Company, of Mount Airy, N. C., began operations as a carrier by motor vehicle, of property, in interstate or foreign commerce, in 1932, and so operated until the latter part of 1934, when his operation was transferred to applicant, Textile Truckers, Inc. Applicant continued the operation theretofore conducted by its predecessor, and, on June 1, 1935, with seven units of equipment, operated as a common carrier by motor vehicle, of rayon and celanese yarn and empty containers for yarn, between certain points in the territory applied for, over irregular routes. Since prior to June 1, 1935, predecessor and applicant have solicited rayon traffic from manufacturers, as well as from weaving mills.

"Abstracts prepared from bills of lading and freight bills giving a list of representative shipments transported by predecessor and applicant since prior to June 1, 1935, were introduced in evidence as proof of the character and extent of their operations. They show that prior to and on June 1, 1935, applicant was regularly engaged in the transportation of rayon yarn from rayon manufacturing plants at Roanoke, and Covington, Va., Parkersburg, W. Va., Meadville and Marcus Hook, Pa., Amcelle, Md., and Kingsport, Tenn., to weaving mills at Hemp and Newton, N. C. Empty containers from rayon yarn are shown to have been transported on return trips from Hemp and Newton to the above-described rayon manufacturing plants. No rayon traffic is shown to have been transported between a considerable number of origins and destinations not served prior to the statutory date."

Plaintiff contends here, as she did before the Commission, that because of the nature of the service rendered in transportation of rayon yarn she is entitled to a wider

territory than that represented by a certificate authorizing transportation between the seven points of origin and the two points of destination. She argues that, having confined herself to a specialized service in the handling of a single commodity, she should be granted a territorial designation measured by her holding out and solicitation and not be confined to a point to point designation determined on the basis of actual business done. Before the Commission she asked for a certificate covering the states of Virginia, North Carolina, South Carolina and Georgia. Before us she contends that it should cover the state of North Carolina. The Commission gave consideration to this contention of plaintiff, but rejected it on the ground that a "grandfather" certificate should be limited to areas and points as to which substantial service had been shown during the crucial period. The business done by plaintiff and her predecessors was distinguished from that involved in transportation of such commodities as "by their very nature habitually move from irregular points". In this connection the Commission said:

"Applicant contends in the exceptions that the evidence of its actual operations on and since June 1, 1935, coupled with its holding out and willingness to transport rayon and empty containers between all points in the territory applied for in the Application, entitles it to authority to transport these commodities between such points, over irregular routes. Protestants challenge this contention. The problem is presented, therefore, as to the extent of the 'grandfather' rights to which applicant is entitled.

"We have taken the view that where there is a class of commodities which by their very nature habitually move from irregular points, rather than in a constant stream from established origins to established destinations in a well defined territory, we will authorize irregular-route service within a fairly wide range of territory. This distinction seems reasonably designed to carry out the intent of Congress. In the broad sense, that intent may be restated to be one that grants to carriers engaged in bona fide operations on June 1, 1935, the right to continue to do what they were doing prior to and continuously since, that date. If a carrier was continually operating over irregular routes from and to various points, then upon a review of the facts and a finding that such type of operation was being conducted, we would without further proof authorize that a carrier continue such operations in the future.

"As seen, predecessor and applicant solicited rayon yarn for transportation to and from points in the territory covered by the application, but the evidence of actual operations since prior to June 1, 1935 shows that they have only transported these commodities from seven points scattered over five states (two each in Virginia and Pennsylvania, and one each in West Virginia, Maryland, and Tennessee) to two points in one state. Thus plainly, this limited showing affords no basis for a conclusion that applicant has performed a substantial service under its holding out to operate between all points in the involved states over irregular routes. Applying the test of substantiality of service as determinative of the areas and points between which applicant has established a home bona fide operation, we conclude that it is entitled to authority to continue operations only between the specific points described in our findings herein."

■ We cannot say that the Commission's findings are not supported by the evidence, that they involve any error of law or that they are so arbitrary or unreasonable as to amount to an abuse of discretion. This being true, the relief prayed for must be denied. "This court has no concern with the correctness of the Commission's reasoning, with the soundness of its conclusions, or with the alleged inconsistency with findings made in other proceedings before it". Virginian Ry. v. United States, 272 U.S. 658, 665, 666, 47 S.Ct. 222, 225, 71 L.Ed. 463; Interstate Commerce Commission v. Union Pac. R. Co., 222 U.S. 541, 32 S.Ct. 108, 56 L.Ed. 308. "Since the Commission did not apply an incorrect standard in defining the nature of appellant's business and its scope, our function is at an end. The precise delineation of an enterprise which seeks the protection of the 'grandfather' clause has been reserved for the Commission." Noble v. United States, 63 S.Ct. 950, 952, 87 L.Ed. ——.

■ That the Commission acted properly in applying substantiality of service as the criterion in limiting territory under the grandfather application, and that we

are bound by its determination limiting the certificate to points between which substantial service has been shown, is settled, we think, by the decision of the Supreme Court in United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 480–482, 62 S.Ct. 722, 726, 86 L.Ed. 971, where the court, in approving a limitation of a "grandfather" certificate to points actually served and not allowing territory embraced in a general holding out, said:

"Authority to operate within a specified 'territory' may include permission to service all points in that area. *On the other hand it may be restricted to designated points therein.* Or as in the instant case, it may extend to all points in a part of that area and to selected localities in another part. *The precise delineation of the area or the specification of localities which may be serviced has been entrusted by the Congress to the Commission.* Alton R. Co. v. United States, 315 U.S. 15, 62 S.Ct. 432, 86 L.Ed. [586]. The Act provides the test of 'bona fide operation.' That standard carries the connotation of substantiality. It also makes clear that a holding out to serve a specified area is not alone sufficient. It is 'actual rather than potential or simulated service' which is required. McDonald v. Thompson, 305 U.S. 263, 266, 59 S.Ct. 176, 178, 83 L.Ed. 164. Substantial, as distinguished from incidental, sporadic, or infrequent, service is required. Substantial service actually rendered may have been confined to narrow limits. * * *

"As we indicated in Alton R. Co. v. United States, supra, the purpose of the 'grandfather clause' was to assure those to whom Congress had extended its benefits a 'substantial parity between future operations and prior bona fide operations.' * * * *We cannot say that that was denied in this case, if the limitations on the territorial scope of the operations are alone considered. While service to and from all points in the States included in the application was not allowed, the reduction was determined by the standard of substantiality of service.* And consideration was given to the characteristics of irregular route carriers and their role in the national transportation system. That involved a weighing of specific evidence in light of the complexities of this transportation service. The judgment required is highly expert. Only where the error is patent may we say that the Commission transgressed. That is not this case." (Italics supplied.)

And later with reference to the scope of the certificate to be granted the court said at pages 489 and 490 of its opinion in 315 U.S., at page 730 of 62 S.Ct., 86 L.Ed. 971: "We express no opinion on the scope of the certificate which should be granted in this case. That entails not only a weighing of evidence but the exercise of an expert judgment on the intricacies of the transportation problems which are involved. That function is reserved exclusively for the Commission. United States v. Maher, supra [307 U.S. 148, 59 S.Ct. 768, 83 L.Ed. 1162]; Alton R. Co. v. United States, supra. Our task ends if the statutory standards have been properly applied."

■ Plaintiff relies upon Alton R. Co. v. United States, 315 U.S. 15, 62 S.Ct. 432, 437, 86 L.Ed. 586; but there is nothing in that case which sustains her contention. The transportation there involved was a drive-away service for automobiles maintained by one Fleming, and the certificate granted by the Commission under the "grandfather" clause covered the territory of states in which Fleming had operated and held out his services to the public. The order of the Commission was assailed by certain railroad companies on the ground that it should have been limited to the points actually served prior to June 1, 1935, but the court held that the question was one for the Commission and not the courts. The decision does not help the position of plaintiff here for two reasons. In the first place, a decision that an allotment of territory under a "grandfather" certificate should be upheld as an exercise of discretion reposed in the Commission cannot be authority for reversing the action of the Commission in another case likewise involving the exercise of discretion. And this is true, even though the discretion may appear to have been exercised differently in the two cases, since we have nothing to do with the consistency or inconsistency of the Commission's decisions. Virginian Ry. v. United States, supra. In the second place, it is perfectly clear that the transportation involved in a drive-away service for automobiles is radically different from that involved here where there was regular movement between fixed points for a number of years. Rightly understood, the Alton case is au-

thority, not for the position of plaintiff, but. for that of defendant; for the court was at pains to point out that the judgment there involved was "for the administrative experts not for the courts".

For the reasons stated, the injunction prayed for will be denied and the suit will be dismissed.

Injunction denied and suit dismissed.