## CAROLINA SCENIC COACH LINES v. UNITED STATES et al.

### Civil Action No. 507.

District Court, W. D. North Carolina, Asheville Division.

July 21, 1944.

Judgment Affirmed Dec. 11, 1944.

802

Monroe M. Redden, of Hendersonville, N. C., and Wilmar A. Hill and Ames, Hill & Ames, all of Washington, D. C., for Carolina Scenic Coach Lines.

Roberts & McInnis and James E. Wilson, all of Washington, D. C., Cherry & Hollowell, of Gastonia, N. C., and Edgar Turlington, of Washington, D. C., for Smoky Mountain Stages, Inc.

Edward Dumbauld, Sp. Asst. to Atty. Gen., Wendell Berge, Asst. Atty. Gen., and Theron L. Caudle, United States Attorney, of Charlotte, N. C., for United States, Daniel W. Knowlton, Chief Counsel, Interstate Commerce Commission, and Allen Crenshaw, Atty., Interstate Commerce Commission, both of Washington, D. C., for Interstate Commerce Commission.

Before PARKER, Circuit Judge, and WEBB and HAYES, District Judges.

PARKER, Circuit Judge.

This is a suit under 28 U.S.C.A. §§ 43–48 to set aside and enjoin an order of the Interstate Commerce Commission granting to Smoky Mountain Stages, Inc., hereafter referred to as "Stages," a certificate of public convenience and necessity, extending its authority as a public carrier of passengers by motor bus so as to authorize it to operate over a certain route between Clinton, S. C., and Augusta, Ga. By the same order, the application of plaintiff, Carolina Scenic Coach Lines, hereafter referred to as "Scenic," for a certificate authorizing operation over the same route was denied. A special court of three judges has been convened pursuant to statute to hear the application for interlocutory injunction, the case has been heard upon the pleadings, the record made before the Commission and the briefs and arguments of counsel, and by consent of parties the cause has been submitted upon the merits for final decree.

Stages is associated with National Trailways System. It made application for the certificate authorizing operation between Clinton and Augusta, so as to close the link in the Trailways Line between the north and Florida points and to enable Trailways to compete with the Greyhound lines for this traffic. Scenic had been operating between Clinton and Augusta over a route slightly different for a portion of the way; but it was not associated with Trailways or with any other line which could adequately handle this traffic between the north and Florida points. When Stages filed its application, Scenic opposed it and filed application for a certificate over the same route, which Stages opposed. The Atlantic Greyhound Corporation also opposed the application of Stages. The Commission referred both applications, under sec. 205(a) of the Interstate Commerce Act, 49 U.S. C.A. § 305(a), to a Joint Board of two members, one from each of the States of South Carolina and Georgia, the states through which the proposed route ran. The Joint Board heard evidence and made a report recommending that the application of Stages be granted and that of Scenic be denied. The matter then came on for hearing before Division 5 of the Commission, which made a thorough analysis of the evidence and wrote its own report, granting the application of Stages and denying that of Scenic. Appeal from this decision was taken to the entire Commission, in accordance with its rules, by petition which the Commission denied, thereby affirming the action of the Division.

It is clear from the record that the local traffic between Clinton and Augusta is a matter of little or no consequence to either of the parties and that the applications here under consideration were made because of the importance of the north and south bridge traffic. Concerning this the Commission made the following statement in its report, which is amply sustained by the evidence before it:

"At present Trailways has no system of through routes between points in eastern seaboard states and Florida. Persons desiring to travel by bus between such points are virtually dependent upon Greyhound, which operates the so-called coast route. Traffic which Trailways' members originates at points on their routes north of Charlotte is transferred at that point to Greyhound, which completes the transportation through the Jacksonville gateway. Northbound traffic originating on the Greyhound lines in Florida generally is not transferred to Trailways' members, Greyhound performing the entire transportation over its lines through Richmond, Washing-

ton, Baltimore, and points north. Thus Trailways' members participating in the transportation of Florida southbound traffic are practically excluded from obtaining Florida northbound traffic. If Stages' application is granted the last link in a chain of through routes of Trailways' members between northern points and Florida will be completed. In addition, the routes of Trailways' members run through west coast Florida points, providing a more direct service to and from such points than that rendered by Greyhound through the Jacksonville gateway. Aside from the direct benefit to the public in having available additional through motor bus facilities to and from Florida points, Trailways' members will be in a position to stimulate potential Florida traffic at points along their routes, resulting in increased revenue to them. Any detriment which Greyhound might suffer by reason of the establishment of another system of through routes is outweighed by the benefit to the public. Having concluded that there is a need for another through north-south service, there remains for consideration whether Scenic and Carolina Stages can accomplish the same result over their present joint routes between Charlotte and Augusta.

"Scenic has been operating between Clinton and Augusta for many years, and also has available by reason of its connection with Carolina Stages a through route between Charlotte and Augusta, via Union, Newberry, and Saluda. It was not, however, until two weeks prior to the hearing herein that convenient connections and a more expeditious service between Charlotte and Augusta was instituted. The maintenance of a coordinated system of independent carriers, such as Trailways, requires cooperation and friendly relations between the various members. The inability in the past of Scenic and Carolina Stages and Trailways to reach a satisfactory agreement as to the placing of these carriers routes in the Trailways' system appears to have been the delaying factor in the establishment of the through route between Charlotte and Augusta and the cause of the filing of Stages' application. It is not indicated that future relations will be more harmonious.

"The granting of Stages' application will place it in a competitive situation with Scenic and Carolina Stages between Charlotte and Augusta and with Scenic between Clinton and Augusta. There is no showing, however, that any substantial traffic now is moving over the combined routes of Scenic and Carolina Stages between Charlotte and Augusta, and it is apparent that relatively little, if any, Florida traffic is handled over these routes. While Scenic has been operating between Clinton and Augusta for a long period of time serving most of the cities and towns on the proposed route, the latter route traverses 63.5 miles of highways not served by Scenic. Persons located on a large portion of such highways have no direct service to or from Clinton, Charlotte, or Augusta; and on 40.7 miles there is no bus service available.

"Stages anticipates that most of the traffic which it will transport over the proposed route will be 'bridge' traffic, but it also wishes to be in a position to transport passengers traveling between points on the proposed route and points on the routes of Trailways' members. There is no evidence as to the amount, if any, of 'bridge' traffic which Scenic transports over its present route between Clinton and Augusta or the number of passengers moving between points on such route and points beyond. Scenic shows, however, that in April, 1941, it carried, on three schedules daily, 211 passengers from Clinton and points south thereof to Augusta, or an average of 2 passengers daily per schedule. It is clear, therefore, that the interstate traffic moving to or from points on such route provides only a small part of its revenue. While a portion of such traffic may be diverted to Stages if the latter's application is granted, any loss of traffic to Scenic would not be a sufficient reason to warrant a denial of Stages' application, when consideration is given to the benefit to be derived by the general public by having available the through routes between New York City and Florida points and points intermediate thereto. We believe that the best interests of the public will be served by granting Stages' application and denying that of Scenic."

We think there can be no question but that on these facts the order of the Commission was amply supported. What public convenience and necessity require in the premises is a matter which Congress has confided to the judgment of the Commission, and not of the courts, to determine. Chesapeake & O. R. Co. v. United States, 283 U.S. 35, 41, 51 S.Ct. 337, 75 L. Ed. 824; Board of Trade of Kansas City

v. United States, 314 U.S. 534, 539, 546, 62 S.Ct. 366, 86 L.Ed. 432; United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 482, 490, 62 S.Ct. 722, 86 L.Ed. 971; Bush Transfer, Inc., v. United States, D. C., 53 F.Supp. 640; Virginia Stage Lines v. United States, D.C., 48 F.Supp. 79. And courts in reviewing orders made by the Commission in the exercise of the discretion reposed in it by Congress may not substitute their judgment for that of the Commission, nor may they set aside the orders unless they are made without substantial evidence to support them, involve error of law or are so manifestly arbitrary and unreasonable as to transcend the power conferred by statute. The well settled rule was thus stated by this Court in the recent case of Bondurant v. United States, D.C., 50 F.Supp. 704, 706:

"We cannot say that the Commission's findings are not supported by the evidence, that they involve any error of law or that they are so arbitrary or unreasonable as to amount to an abuse of discretion. This being true, the relief prayed for must be denied. 'This court has no concern with the correctness of the Commission's reasoning, with the soundness of its conclusions, or with the alleged inconsistency with findings made in other proceedings before it'. Virginian R. [Co.] v. United States, 272 U.S. 658, 665, 666, 47 S.Ct. 222, 225, 71 L.Ed. 463; Interstate Commerce Commission v. Union Pac. R. Co., 222 U.S. 541, 32 S.Ct. 108, 56 L.Ed. 308."

See also the statement of the rule by another three-judge court of this Circuit in Anchor Coal Co. v. United States, D.C., 25 F.2d 462, 471, as follows:

"If the determination of the Commission finds substantial support in the evidence, the courts will not weigh the evidence, nor consider the wisdom of the Commission's action, which, within the scope of its jurisdiction, is conclusive, unless there be some irregularity in the proceeding or some error in the application of rules of law. Chicago, R. I. & P. R. [Co.] v. United States, 274 U.S. 29, 33, 47 S.Ct. 486, 71 L.Ed. 911; Virginian R. Co. v. United States, 272 U. S. 658, 47 S.Ct. 222, 71 L.Ed. 463; Western Paper Makers' Chem. Co. v. United States, 271 U.S. 268, 46 S.Ct. 500, 70 L. Ed. 941. If, however, in making the order complained of, the Commission has exceeded its powers, or has proceeded upon an erroneous theory of law, or if its action is so manifestly arbitrary and unreasonable as virtually to transcend the authority conferred upon it, the courts are not bound by its action. Southern Pac. Co. v. I. C. C., 219 U.S. 433, 31 S.Ct. 288, 55 L.Ed. 283; I. C. C. v. Union Pac. [R.] Co., 222 U.S. 541, 32 S.Ct. 108, 56 L.Ed. 308; United States v. New York Cent. R. R. [Co.], 263 U.S. 603, 44 S.Ct. 212, 68 L.Ed. 470; United States v. New River Co., 265 U.S. 533, 540, 44 S.Ct. 610, 68 L.Ed. 1165."

In the Virginia Stages case, supra, 48 F.Supp. 79, 83, which was much like this in that it involved a decision as to which of two competing bus lines was to have operating rights over a certain route, Judge Dobie stated the rule as follows:

"The function of 'weighing' the evidence, therefore, remains peculiarly one for the Commission 'appointed by law and informed by experience', and not for the courts. Alton Railroad Co. v. United States, 315 U.S. 15, 62 S.Ct. 432, 86 L.Ed. 586; Gray v. Powell, 314 U.S. 402, 62 S.Ct. 326, 86 L.Ed. 301. This is in accord with the realization that the regulation of transportation involves various economic factors and the exercise of an empirical judgment, since 'The stuff of the process is fluid and changing—the resultant of factors that must be valued as well as weighed. Congress has therefore delegated the enforcement of transportation policy to a permanent expert body and has charged it with the duty of being responsive to the dynamic character of transportation problems.' Board of Trade of Kansas City v. United States, 1942, 314 U.S. 534, 546, 62 S.Ct. 366, 372, 86 L.Ed. 432."

■ Scenic questions the validity of the order because there was an order of reference to the local board composed of members from the States of Georgia and South Carolina, but we see nothing in the point. The proposed route over which the certificate of convenience and necessity was asked ran through the States of Georgia and South Carolina; and the statute expressly provides for reference to such a board when "operations * * * proposed to be conducted involve not more than three States." 49 U.S.C.A. § 305(a). The fact that the bridge traffic would bring passengers from other states is immaterial, since the controlling consideration is the "operations proposed." But even if there had been error in the matter, the record does not show that Scenic raised any objection

thereto either before the Board or before the Commission, and it is too late to object for the first time in this Court. Furthermore, if objection had been made and sustained, the result would have been merely to give the Commission discretion whether to refer the matter to a Board for hearing or to hear it itself; and, since the Commission has heard the matter at large and filed an opinion giving its independent judgment on the case, it is not possible to see how Scenic has been hurt by the hearing before the Board, even if that hearing was not appropriate in the premises. Empire Trails v. United States, D.C., 53 F.Supp. 373; North Coast Transp. Co. v. United States, D.C., 54 F.Supp. 448.

For the reasons stated the injunction will be denied and the suit will be dismissed.

Injunction denied and suit dismissed.