**MIDWEST EMERY FREIGHT SYSTEM, INC., et al., Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**No. 68 C 650.**

United States District Court
N. D. Illinois, E. D.

Oct. 4, 1968.

---

Arnold L. Burke, of Axelrod, Goodman & Steiner, Chicago, Ill., for Midwest Emery Freight System and Belford Trucking Co., Inc.

James C. Hardman, of Singer & Hardman, Chicago, Ill., for J. B. Montgomery, Inc.

Charles J. Kimball, of Nelson, Harding, Leonard & Tate, Lincoln, Neb., McKenna, Storer, Rowe, White & Haskell, Chicago, Ill., for W. J. Digby, Inc., intervening defendant.

Richard Peterson, of McKenna, Storer, Rowe, White & Haskell, Chicago, Ill., Acklie & Peterson, Lincoln, Neb., for intervening defendant Curtis, Inc.

Arthur R. Hauver and Edward T. Lyons, Jr., of Jones, Meiklejohn, Kehl &

Lyons, Denver, Colo., for intervening defendant Denver-Albuquerque Motor Transport, Inc.

Thomas A. Foran, U. S. Atty., and Robert J. Krajcir, Asst. U. S. Atty., Chicago, Ill., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., for defendants United States.

Robert W. Ginnane, Gen. Counsel, and John E. Faulk, Atty. Interstate Commerce Commission, Washington, D. C., for the Interstate Commerce Commission.

Before SCHNACKENBERG, Circuit Judge,[1] and PERRY and WILL, District Judges.

## OPINION

WILL, District Judge.

This is an action to annul and set aside an order of the Interstate Commerce Commission (Commission) which granted certificates of public convenience and necessity pursuant to Section 207(a) of the Interstate Commerce Act, 49 U.S.C. § 307(a), to Denver-Albuquerque Motor Transport, Inc. (Denver-Albuquerque), W. J. Digby, Inc. (Digby), and Curtis, Inc. (Curtis), in the following proceedings.

No. MC–107839 (Sub–No. 77), Denver-Albuquerque Motor Transport, Inc., Extension—Greeley, Colorado to Twelve States.

No. MC–113678 (Sub–No. 98), Curtis, Inc., Extension—Wisconsin.

No. MC–113678 (Sub–No. 102), Curtis, Inc., Extension—Minnesota.

No. MC–113678 (Sub–No. 110), Curtis, Inc., Extension—Greeley, Colorado to Twelve States.

No. MC–113678 (Sub–No. 111), Curtis, Inc., Extension—North Dakota and South Dakota.

No. MC–113678 (Sub–No. 118), Curtis, Inc., Extension—Florida.

No. MC–113678 (Sub–No. 113), Curtis, Inc., Extension—Greeley, Colorado to Iowa.

No. MC–113678 (Sub–No. 136), Curtis, Inc., Extension—Eight States.

No. MC–113678 (Sub–No. 148), Curtis, Inc., Extension—Kansas and Missouri.

No. MC–113678 (Sub–No. 157), Curtis, Inc., Extension—Seven States.

No. MC–115826 (Sub–No. 52), W. J. Digby, Inc., Extension—Greeley, Colorado to Twelve States.

These various grants of motor common carrier authority permitted Denver-Albuquerque, Digby and Curtis to transport basically meats, meat products, meat by-products from Denver and/or Greeley, Colorado, to numerous points throughout the Southeast and Midwest.

Section 205(a) of the Interstate Commerce Act, 49 U.S.C. § 305, requires the Commission to refer motor carrier applications for authority to perform transportation involving three states or less to Joint Boards.[2] Accordingly, since the applications of Curtis in Sub–Nos. 110, 131 and 148 involved three states or less, these applications were so assigned, the remaining applications being assigned to an Examiner of the Commission. The three Joint Boards and the Examiner orally heard all of the applications on a consolidated record and issued a single joint recommended report and order.

In their report, the Examiner and the Joint Boards recommended that the various applications be granted substantially

---

1. Prior to his death on September 15, 1968, Judge Schnackenberg concurred in the conclusions set forth herein.

2. Section 205(a) provides in pertinent part:
   The Commission shall, when operations of motor carriers or brokers conducted or proposed to be conducted involve not more than three States, and the Commission may, in its discretion, when opera-

   tions of motor carriers or brokers conducted or proposed to be conducted involve more than three States, refer to a joint board for appropriate proceedings thereon, any of the following matters arising in the administration of this part with respect to such operations as to which a hearing is required or in the judgment of the Commission is desirable: Applications for certificates, * * *

as sought. However, with respect to Curtis' Sub–No. 110, the Joint Board recommended that this authority be restricted against tacking [3] with other applications being sought therein by Curtis, viz., Sub–Nos. 98, 102, 111, 131, 148 and 157. The basis for this restriction was that Curtis' Sub–No. 110 application, as published in the Federal Register of March 25, 1965, failed to indicate that it would be tacked with the aforementioned Sub–Nos. Although plaintiffs' objections to the receipt of Curtis' evidence of proposed tacking operations was denied, they did not request a continuance for the purpose of presenting additional evidence in protest. After the recommended report was served, exceptions and replies were filed by the parties.

By its report and order served July 21, 1967, the Commission, Review Board Number 2, approved the recommendations of the Joint Boards and the Examiner except for that portion of the recommendation relating to the tacking restriction in Curtis' Sub–No. 110 application. While the Commission agreed with the Joint Board that the tacking restriction imposed was proper, it noted, however, that a public need had been demonstrated by various shipper witnesses for Curtis' service from Denver to points in 11 Midwestern and Southeastern states [Commission's Report, sheet 16]. Accordingly, the Commission granted this authority without the restriction with a proviso that Curtis would not receive a certificate until 30 days from the date of publication in the Federal Register during which time any other interested party could petition for reopening of the proceeding "setting forth in detail the precise manner in which" such party had been prejudiced [4] [Commission's Report, Sheet 17].

Plaintiffs, Midwest Emery Freight System, Inc. (Midwest Emery), Belford Trucking Co., Inc. (Belford), and J. B. Montgomery, Inc. (Montgomery), filed petitions for reconsideration and further hearings. However, they failed to comply with Rule 101(b) of the Commission's General Rules of Practice, 49 C.F. R. 1.101(b).[5] Specifically, Montgomery failed to explain why such evidence was not adduced at the oral hearing even though it was apparently in its possession and was substantially the same as introduced in another hearing conducted separately but close to the same time as the instant case was heard. Nevertheless, Montgomery failed to request a continuance of the oral hearing in order to present such evidence. Likewise, Midwest Emery and Belford failed to request a continuance nor did they summarize the evidence that they claim could have been presented. Accordingly, the Commission denied plaintiffs' petitions.

While Midwest Emery's and Belford's attack in this action is generalized against grants of authority to all three applicants, their main effort is directed towards casting doubt upon the validity of the grant of authority to Curtis in Sub–No. 110. Montgomery limits its attack to the grants of authority in Curtis' Sub–Nos. 110, 131, 148 and 157. However, like Midwest Emery and Belford, its main thrust is against Sub–No. 110.

Plaintiffs' attack is basically twofold. First, procedural, in that they were denied a rehearing and that the Joint Board hearing the Sub–No. 110 application lacked jurisdiction to determine the application. Secondly, they question whether the Commission made adequate findings and whether the evidence of record will support a grant of authority to the applicants.

---

3. Tacking is the joinder of two or more separate grants of authority at a point common to both.

4. See F.R. 11247, August 2, 1967.

5. Rule 101(b) provides: *Rehearing or further hearing.* When in a petition filed under this section opportunity is sought to introduce evidence, the evidence to be adduced must be stated briefly, such evidence must not appear to be cumulative, and explanation must be given why such evidence was not previously adduced.

Defendants, on the other hand, contend that jurisdiction lay with the Joint Boards since the scope of the proposed operation must be determined from the application as filed—here, between two points in one state—, notwithstanding any tacking possibilities; that the Commission's denial of rehearing was proper since plaintiffs, having actual notice at the oral hearing that Curtis proposed to tack its Sub–No. 110 application with other applications then pending, failed to request a continuance to present evidence in protest thereby waiving their rights to a rehearing; and, finally, that the Commission made adequate findings, supported by substantial evidence of record.

For the reasons hereinafter set forth, the orders of the Commission are affirmed.

As indicated, plaintiffs allege two procedural errors, 1) that the proceeding identified as Curtis, Inc., M.C. 113678 (Sub–No. 110), was erroneously assigned to Joint Board No. 126 in contravention of Section 205 of the Interstate Commerce Act, 49 U.S.C. § 305, and 2) that they were erroneously denied a rehearing or further hearing with respect to the application in question.

While all plaintiffs contend that the application Sub–No. 110 was improperly assigned to Joint Board No. 126, they assign somewhat conflicting reasons for that conclusion. Montgomery argues that since the initial public notice indicated that Curtis' Sub–No. 110 application was for service between Greeley and Denver, Colorado, for the purpose of tacking with its authority in MC–113678, which involved three states, a total of four states was involved. Thus, according to Montgomery, where more than three states are involved, the Commission may assign the application to a Joint Board but the Joint Board must be composed of a member from each state. Since, it argues, the public notice indicates on its face that more than three states are involved, Montgomery faults the Commission for assigning the application to Joint Board No. 126, comprised of only one member, Paul V. Hodges of Colorado, rather than to a Joint Board composed of members from each state.

On the other hand, Midwest Emery and Belford argue that the Curtis Sub–No. 110 application as initially published was properly assigned to Joint Board No. 126, but that Sub–No. 110 as republished involves at least twelve states and, as such, the assignment to Joint Board No. 126 violates Section 205 of the Interstate Commerce Act, 49 U.S.C. § 305.

Thus, while Montgomery claims error in the initial assignment, Midwest Emery and Belford apparently see no problem in initially assigning the application to a single member Joint Board but see error in permitting the same Joint Board to hear the same application between Greeley and Denver, Colorado, albeit to be tacked with authority involving a total of twelve states rather than four states as initially published.

It should be noted that neither Montgomery nor Midwest Emery raised any objections at the oral hearing to any of the applications being heard as they were originally assigned, and particularly application Sub–No. 110, heard by Joint Board No. 126, even though it became apparent during the course of that hearing that the tacking question was involved and that, accordingly, the application involved more than a certificate between Greeley and Denver, Colorado.

In any event, it is clear that the assignment of a motor carrier application to a Joint Board composed of three members or less is proper, if the application does not in itself indicate that the certificate will permit tacking with other grants previously made to the carrier but indicates that three or less states are involved in the basic application. See Carolina Scenic Coach Lines v. United States, 56 F.Supp. 801 (W.D.N.C.1944), aff'd 323 U.S. 678, 65 S.Ct. 277, 89 L.Ed. 550 (1944), and North Coast Transportation Co. v. United States, 54 F.Supp. 448 (N.D.Cal.1944), aff'd 323 U.S. 668, 65 S.Ct. 62, 89 L.Ed. 543 (1944), reh. den. 323 U.S. 814, 65 S.Ct. 114, 89 L.Ed. 647 (1944).

■ Not only was the assignment to Joint Board No. 126 consistent with the application, nor did Montgomery or Midwest Emery raise any objection thereto, but there appears to have been no prejudice to them or any other party. All of the applications here involved, whether assigned to an examiner or to a Joint Board, were consolidated, and the three Joint Boards and the examiner orally heard all of the applications and issued a single joint recommended report and order. Thereafter, the Commission, as in *Carolina Scenic,* supra, rendered its opinion after full review of the joint recommended report and order. Absent any evidence of prejudice to plaintiffs or any other parties, the most that can be urged is that the assignment of application Sub–No. 110 to Joint Board No. 126 was technically incorrect on the basis of the evidence adduced at the hearing, although technically correct on the basis of the substance of the application itself. Under such circumstances, judicial intervention is clearly not warranted in the absence of a showing that the procedural or technical error, if any, was prejudicial to the persons complaining thereof. See De Camp Bus Lines v. United States, 185 F.Supp. 336, 343 (D.N.J.1960).

The second procedural contention raised by plaintiffs is that the Commission abused its discretion in refusing to grant them a rehearing.

As previously indicated, the Joint Board with respect to Curtis' application Sub–No. 110, recommended that the authority granted to Curtis thereunder be restricted against tacking with other applications being sought by Curtis, Sub–Nos, 98, 102, 111, 131, 148 and 157, on the ground that Curtis' Sub–No. 110 application, as originally published in the Federal Register of March 25, 1965, failed to indicate that it would be tacked with the other sub numbers. During the course of the hearings, the plaintiffs objected to the receipt of Curtis' evidence with respect to the proposed tacking which objections were denied. They did not, however, request any continuance for the purpose of presenting evidence in opposition to the proposed tacking.

The Commission, by its report and order of July 21, 1967, acting through Review Board No. 2, approved the recommendations of the Joint Board and the Examiner, except that it eliminated the tacking restriction in Curtis' Sub–No. 110 authorization, finding that the record demonstrated a public need by various shippers for Curtis' service from Denver to points in eleven midwestern and southeastern states. In granting the authority sought in Sub–No. 110, the Commission inserted a proviso that the certificate not be issued until 30 days from the date of republication in the Federal Register, during which time any other interested party could petition for reopening of the proceedings, such petition to set forth in detail the precise manner in which the party had been prejudiced.

The petitions filed by plaintiffs failed to explain, as required by Rule 101(b) of the Commission's General Rules of Practice, 49 CFR 1.101(b), why the evidence sought to be presented at a rehearing had not or could not have been presented at the original hearing. One of the petitions, Montgomery's, revealed that the evidence sought to be introduced at the rehearing had been available at the time of the original hearing while the other petitions failed to summarize the evidence they sought to present. None of them explained why a continuance of the original oral hearing, in order to present such evidence, had not been sought.

■ It is, of course, well established that the grant or denial of petitions for rehearing or reconsideration rests in the sound discretion of the Commission. See Interstate Commerce Commission v. Jersey City, 322 U.S. 503, 64 S.Ct. 1129, 88 L.Ed. 1420 (1944); United States v. Pierce Auto Freight Line, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1945). The Commission's refusal to or-

der a rehearing and reopen proceedings, under all the instant circumstances, does not constitute a clear abuse of the Commission's discretion. Plaintiffs were clearly aware of the tacking aspect of the Sub–No. 110 application well before the hearings thereon concluded, yet made no effort to introduce evidence with respect thereto or to obtain a continuance for that purpose. After the Commission had authorized the tacking, the plaintiffs then sought a rehearing for the purpose of introducing evidence in opposition to such authorization. The Commission was clearly within the area of its sound discretion in either granting or refusing such a request.

In addition to the Commission's alleged procedural errors, the plaintiffs urge that the grants of authority under the various applications were erroneous in that they are not supported by substantial evidence and the Commission has improperly applied the statutory standards. Plaintiffs also contend that the Commission made inadequate findings in connection with certain of its conclusions.

In this connection, it should be noted that plaintiffs formally challenge the decisions and orders of the Commission in all of the following proceedings: No. MC–107839 (Sub–No. 77), No. MC–113678 (Sub–Nos. 98, 102, 110, 111, 113, 118, 136, 148, 157), and No. MC–115826 (Sub–No. 52). Notwithstanding their general attack on the Commission's actions, the plaintiffs' briefs are directed primarily to Docket No. MC–113678 (Sub–No. 110) which is described in the brief of Midwest Emery and Belford as the "key application." We will accordingly deal with that application first and primarily.

As originally filed, Sub–No. 110 was a request by Curtis for authority to transport various meat and meat products between Greeley, Colorado and Denver, Colorado for the purpose of tacking with existing authority which Curtis held in Docket No. MC–113678. That existing authority authorized Curtis to transport the commodities in question from Denver, Colorado to Washington, D.C., New York, N.Y. and Boston, Massachusetts. In the course of the hearing on all of the applications which were conducted simultaneously, it became apparent that under Sub–Nos. 98, 102, 111, 118, 131, 136, 149 and 157, Curtis was seeking authority to transport meat and meat products between Denver, Colorado to various destinations in a number of states, including Nebraska, Kansas, Missouri, Iowa, North Dakota, South Dakota, Minnesota, Louisiana, Alabama, Mississippi and Wisconsin. Seven Denver shippers and one very large shipper, Montford Packing Company of Greeley, supported the various applications.

Much of the evidence adduced in support of the various Curtis applications under Docket No. MC–113678, was likewise applicable to the Denver-Albuquerque application, No. MC–107839 (Sub–No. 77) and the Digby application, No. MC–115826 (Sub–No. 52).

■■ There is no proposition in the law more settled than that the findings of the Commission as to whether or not the public convenience and necessity warrant the issuance of a certificate authorizing an applicant carrier to engage in interstate operations are not to be disturbed by a reviewing court if they are supported by substantial evidence. Notwithstanding that the record may also contain substantial evidence supporting a contrary conclusion or that the court might, as a matter of original impression, arrive at such contrary conclusion, it is bound to affirm the Commission's findings if there is also substantial evidence to support them. See Illinois Central Railroad Co. et al. v. Norfolk & Western Railway Co., et al., 385 U.S. 57, 87 S.Ct. 255, 17 L.Ed.2d 162 (1966).

■ The plaintiffs contend that the evidence adduced by the carriers at the consolidated hearing covered primarily potential rather than actual traffic and urged that this is insufficient to constitute a "rational basis," or substantial

evidence for the ultimate findings of the Commission. The question, of course, is whether or not the projection of potential traffic was merely wishful thinking or is a reasonable expectation.

The Commission concluded that, in the light of the historical record of expansion and extension of the various packing company shippers, the potential was real and not ephemeral. In support of its conclusion, the Commission set out a detailed summary of the evidence of past shipments and potential future markets. Based on the evidence and its analysis, the Commission concluded that the public convenience and necessity required that the applicants be authorized to provide the various services in question. In addition, the Commission detailed the variety and types of services which the applicants could provide, some of which are not available from the presently certificated carriers. Equally important is the fact that the shippers expressed disappointment and dissatisfaction with the services of the presently certificated carriers who are the plaintiffs herein.

After the foregoing analysis, the Commission found:

> The perishable nature of the commodities, the requirements of the consignees, the present and potential volume of traffic from both origins, as well as the deficiencies and the apparent distinterest of the protestants, convince us that applicants, which are Denver based carriers with long experience in the transportation of shippers' products, should be enabled to render the latter a complete service.

These conclusions are supported by specific findings with respect to the need for the services to be certificated and the applicant carriers' capacities to perform them.

## CONCLUSION

In light of the Commission's findings and conclusions, and the substantial evidence in support thereof, we affirm the Commission's action.