## READY TRUCK LINES, Inc., v. UNITED STATES et al.

No. 2568.

District Court, N. D. Illinois, E. D.

May 2, 1941.

Gerald T. Wiley, Harold T. Halfpenny, and Richard F. Hahn, all of Chicago, Ill., for plaintiff.

Frank Coleman Atty. Gen., for the United States.

Daniel Kunkel and Allen Crenshaw, both of Washington, D. C., for Interstate Commerce Commission.

Robert C. Eardley, Asst. U. S. Atty., of Chicago, Ill., for J. Albert Woll.

Petit, Olin & Overmyer, of Chicago, Ill., for intervenor.

Before KERNER, Circuit Judge, and SULLIVAN and IGOE, District Judges.

PER CURIAM.

In the above-entitled cause, the court makes the following findings of fact:

1. The plaintiff, a corporation, brings this suit to suspend, set aside and annul the Interstate Commerce Commission's orders of September 30, 1940, and December 20, 1940, entered in a proceeding entitled Ready Truck Lines, Inc., Contract Carrier Application, MC 28005.

2. On February 12, 1936, plaintiff's predecessor filed an application with the Interstate Commerce Commission (hereinafter referred to as "Commission") under Section 209(a) of the Interstate Commerce Act, 49 U.S.C.A. § 309(a), seeking a "grandfather" permit as a contract carrier by motor vehicle of packing house products, fertilizer, canned goods, groceries, and roofing materials, in interstate or foreign commerce, between points in Illinois, Indiana, Ohio, and Kentucky over irregular routes.

3. Hearing was had on this application at Chicago, Illinois, on October 17, 1938, at which numerous motor carriers and rail carriers operating in the territory in which rights were sought opposed the granting of the application.

4. Prior to the issuance of a final report and order by the Commission, petition was filed by certain protestants asking that the proceeding be reopened. The basis for this request was that certain evidence developed at a hearing before the Commission in application of Budreck Truck Lines, MC 39073, indicated that plaintiff had misrepresented the facts as to his inability to produce documentary proof of operations prior to September, 1935, because his records had been destroyed by fire, and further that all of the claimed operations were not those of the plaintiff, but of another carrier who had a valid "grandfather" application then pending.

5. On November 21, 1939, the Commission reopened the proceedings and further hearing was held thereon at Chicago on February 19, 1940. Further hearing was also had on June 3, 1940, of which plaintiff had due notice.

6. At the hearing on June 3, 1940, plaintiff advised the sitting examiner that he had documentary proof of his operations subsequent to September, 1935, but that he would not offer such evidence in the case, being content to rest upon the record as then constituted, notwithstanding that the sitting examiner stated that he would entertain a motion to continue the hearing in order to afford plaintiff an opportunity to introduce such evidence.

7. On September 30, 1940, the Commission issued its report and order denying plaintiff's application, said report being officially reported in 26 M.C.C. 213.

8. On November 4, 1940, plaintiff filed a petition asking for the postponement of the effective date of the order of September 30, 1940, and for rehearing. The grounds advanced for rehearing were that plaintiff had procured documentary evidence in support of his claims of operations on July 1, 1935, and continuously thereafter. On December 20, 1940, the Commission by order denied this petition.

9. The findings of the Commission as set out in said report of September 30, 1940, upon which its order of the same date denying plaintiff's application was based, are as follows:

"Williams was granted a permit by the Public Service Commission of Indiana on November 19, 1937, and by the Public Utilities Commission of Ohio on January 10, 1938. On or about July 1, 1935, most of the shipments alleged to have been transported by him were transported by other carriers and by so-called owner-operators. The testimony is conflicting as to whether the shipments were transported at that time on the shipping documents of Williams or on those of the carriers who actually performed the transportation service. It is estimated by Williams that on July 1, 1935, approximately 70 per cent of the shipments tendered to him were transported on equipment other than his own. Late in 1935 and early in 1936, most of the shipments tendered to Williams were transported by either the B. & R. Trucking Company, of Argos, or Selab, Inc., under permits granted to these lines by the States of Indiana and Ohio. After Williams severed relations with these lines, he operated his own equipment into Indiana either without State authority or under State permits granted to B. &. R. Trucking Company and other motor lines without their knowledge or consent.

From this time until November 19, 1937, when Williams was authorized to operate in interstate commerce in Indiana, he was fined on numerous occasions for failure to carry insurance and to comply with other requirements of that state."

"The lease arrangement consisted of nothing more than a verbal understanding between Williams and the owner-operators that the latter would perform service for Williams on a per-trip basis, for which compensation would be from 65 to 80 per cent of the revenue."

"A witness associated with Ready Foods Company since August 1935, except for the period from February to April 1936, when he was employed by Williams testified that shipments tendered to Williams from August 1935 to March 1936 moved over lines of B. & R. Trucking Company of Argos, Ind., and certain other motor lines. During this time cargo insurance was carried by these carriers and not by Williams on such shipments."

"Whereas here, it has been established that the applicant claiming 'grandfather' rights made extensive use of the facilities and services of other carriers whose vehicles were not under its domination and control, there should be a clear showing by the applicant as to what, if any, interstate operations were carried on by the use of its own vehicles. No such showing has been made in this proceeding. It is not at all certain how many, if any, vehicles were owned and operated by Williams on or prior to July 1, 1935."

"In addition to the necessity for showing the exact character and scope of the operations conducted by Williams on July 1, 1935, the burden is on applicant to establish the truth of all allegations in regard to the continuance thereof by competent and substantial evidence. No such showing has been made. No documentary evidence was submitted to show bona fide operations on July 1, 1935, and continuously since that time, and the oral evidence in regard thereto is vague and somewhat contradictory. The evidence is insufficient to establish that Williams owned or operated any vehicles in his own name on July 1, 1935. The exact date on which he began operation in his own name is not clear from the record. We are not convinced that any interstate operations were performed by Williams prior to November 1935, when he was employed by other carriers."

"We find that applicant has failed to establish that its predecessor in interest was on July 1, 1935, and that such predecessor and applicant continuously since then have been, in bona fide operation, in interstate or foreign commerce, as a contract carrier by motor vehicle of any commodities between the points set forth in the application; and that the application should be denied."

The court thereupon announces the following conclusions of law:

1. The plaintiff was accorded a full and fair hearing before the Commission.

2. The Commission did not err in entering its order of December 20, 1940, denying plaintiff's petition for rehearing.

3. The findings set forth in the report of the Commission of September 30, 1940, considered as a whole, are sufficient to sustain and justify the order of the Commission of September 30, 1940, and the testimony and exhibits received by the Commission, as set out in the certified transcript filed in this cause, contain substantial evidence to support the findings of the Commission in its said report and its order made pursuant thereto.

4. The action of the Commission upon plaintiff's application, as set out in its report and order, was a valid exercise of its legal powers, and was warranted by the facts shown in the Commission's records.

5. The plaintiff's bill will be dismissed for want of equity.