**VIRGINIA STAGE LINES, Inc., v. UNITED STATES et al.**

No. 82.

District Court, W. D. Virginia.

Dec. 21, 1942.

John S. Battle and Perkins, Battle & Minor, all of Charlottesville, Va., and Edgar Turlington and Roberts & McInnis, all of Washington, D. C., for plaintiff.

Thurman Arnold, Asst. Atty. Gen., Edward Dumbauld, Sp. Asst. to Atty. Gen., Robert L. Pierce, Sp. Asst. to Atty. Gen., and Frank S. Tavenner, Jr., U. S. Atty., of Woodstock, Va., for United States.

Allen Crenshaw, of Washington, D. C. (Daniel W. Knowlton, of Washington, D. C., of counsel), for Interstate Commerce Commission.

Robert E. Quirk, of Washington, D. C., for Carolina Coach Co., Inc.

Before DOBIE, Circuit Judge, and PAUL and POLLARD, District Judges.

DOBIE, Circuit Judge.

Plaintiff, Virginia Stage Lines, Incorporated (hereinafter referred to as Virginia Stage), instituted a civil action seeking relief from allegedly arbitrary and capricious action of the Interstate Commerce Commission (hereinafter referred to as the Commission) in denying the application of Virginia Stage for the purchase of certain operating route rights in the State of Virginia. The asserted claim arises under Section 5 of the Interstate Commerce Act, as amended, 49 U.S.C.A. § 5, and the jurisdiction of this Court is invoked under the provisions of 28 U.S.C.A. § 41(28) and §§ 43–48, as applied and extended by Section 205(g) of the Interstate Commerce Act, as amended, 49 U.S.C.A. § 305(g).

Virginia Stage is a corporation organized under the laws of the State of Virginia with its principal place of business at Charlottesville, Virginia. It operates as a common carrier by motor vehicle of passengers and their baggage, and of mail, newspapers and express, in the States of Virginia and North Carolina, and in the District of Columbia. Richmond-Greyhound Lines, Inc. (hereinafter referred to as Greyhound), Carolina Coach Company of Virginia (hereinafter referred to as Carolina Coach), and Peninsula Transit Company (hereinafter referred to as Peninsula), are also motor carrier companies operating, or formerly operating, in the State of Virginia.

Peninsula had extensive operating rights in the southeastern area of Virginia, including two routes between Richmond and Norfolk. One of these was over route 60 north of the James River. The other was south of the James River on route 1 from Richmond to Petersburg; thence on route 36 and 10 by way of Hopewell to Benns Church; thence to Bartlett and over route 17 to Norfolk through Portsmouth. Peninsula also operated from Benns Church to

Suffolk. Greyhound had operating rights from Richmond to Norfolk over a route which traversed highway 1 to Petersburg; thence over highway 460, through Suffolk, into Norfolk.

For several years Greyhound had sought to purchase the operating rights of Peninsula, but the Commission refused to sanction such action on the ground that consolidation of these companies would give Greyhound a monopoly of bus transportation to and from Norfolk. See 5 M.C.C. 394; 35 M.C.C. 555. Virginia Stage and Carolina Coach both appeared as protestants to this consolidation and succeeded in preventing its approval. While this hearing was pending, Greyhound, in an effort to eliminate the objections urged offered to sell to Carolina Coach, or such companies as might join with the latter, one of the two routes south of the James River from Petersburg to Suffolk. Such a transfer to Carolina Coach would have given it a route from Richmond to Norfolk by connection with its existing operating rights between Richmond and Petersburg and between Suffolk and Norfolk. This offer was rejected by Carolina Coach and by plaintiff at that time and the application for consolidation of Greyhound and Peninsula was denied. Later a petition for reconsideration by the full Commission was filed by Greyhound and upon reconsideration by the entire Commission the application of Greyhound to acquire control of Peninsula was approved June 9, 1941, upon the condition however that Greyhound "within 60 days from the date hereof shall renew its offer with respect to transfer to a protesting carrier of one of the routes between Richmond and Norfolk". 36 M. C.C. 747, 752.

Carolina Coach and Virginia Stage, being unable to agree upon any joint action, each sought to acquire the rights which Greyhound had been ordered to dispose of. Greyhound renewed to Carolina Coach its former offer to transfer Peninsula's former rights between Petersburg and Suffolk and on July 7, 1941, Carolina accepted the offer. On July 3, 1941, Virginia Stage offered to acquire from Greyhound operating rights for the entire distance between Richmond and Norfolk over the old Peninsula route between these cities. This offer was accepted by Greyhound on July 23, 1941, upon condition that the Commission and the State of Vir-

ginia would approve a "split" of its operating authority between Richmond and Petersburg and between Benns Church and Norfolk. This condition was imposed by Greyhound to insure preservation of its rights to continue operating over these segments.

It will be noted that the Commission's order of June 9, 1941, speaks with approval of the offer previously made by Greyhound to transfer to Carolina Coach the rights between *Petersburg* and *Suffolk* but concludes with the requirement that Greyhound "shall renew" its offer to dispose of one of the routes "between *Richmond* and *Norfolk*". Point is made by petitioner here that its offer alone complies literally with the last quoted language and that Carolina's offer is for only a portion of the route between Richmond and Norfolk. We find no merit in this distinction of wording. That the Commission ordered Greyhound to "renew" its previous offer indicates that the offer previously made to Carolina, if accepted by the latter, would meet the Commission's requirement. What the Commission insisted on was competition for Greyhound between Richmond and Norfolk and either offer would accomplish this; in the case of Virginia Stage, by new rights for the entire distance between these cities; in the case of Carolina, by junction of the new rights acquired with segments over which it already had rights.

The Interstate Commerce Act provides that the Commission must approve the sale of franchise rights and Greyhound, desiring to remain neutral as between the applicants and apparently believing that either offer complied with the conditions imposed on it, seemingly left it to the Commission to decide which offer should be approved. The respective applications of Carolina Coach and Virginia Stage were consolidated by the Commission and a single report and order were issued on April 24, 1942, wherein the Commission (a) approved and authorized the purchase by Carolina Coach, for the sum of $10,-000.00, of the operating rights previously held by Peninsula between Petersburg and Suffolk, and between Benns Church and a point on U. S. Highway 17 near Bartlett, Virginia, and (b) denied the joint application of Greyhound and Virginia Stage for the approval and authorization of the purchase by Virginia Stage, for $10,000.00, of the same operating rights

and, in addition thereto, the operating rights previously held by Peninsula between Richmond and Petersburg, and between Norfolk and the above mentioned point on U. S. Highway 17. See 38 M.C. C. 347.

The Commission concluded that this transfer of the operating rights to Carolina Coach alone was consistent with the public interest and the terms thereof were just and reasonable, and that it complied fully with the condition previously imposed by the Commission.

A petition for reconsideration was denied by the Commission on September 8, 1942. Virginia Stage then filed a complaint in this Court, alleging that the Commission, in its order of April 24, 1942, acted in a manner so arbitrary and capricious as to transcend its authority and to deprive Virginia Stage of valuable property without due process of law, and Virginia Stage asked this Court to set aside this order and restrain its enforcement by the Commission.

It would be difficult to conceive of a statute which confers broader authority and greater administrative discretion than Section 5 of the Interstate Commerce Act. Under that section, the Commission may approve any merger, purchase, consolidation, lease or contractual arrangement affecting motor carriers which it finds will be "consistent with the public interest". Moreover, except where rail carriers are involved, transactions within the scope of Section 5 may be approved by the Commission without a hearing. In the instant case, however, a public hearing was held at which the parties exercised the rights given them to introduce testimony and to examine witnesses.

■ With regard to judicial review of the decisions and orders of the Commission, it is well settled that the court's function is exhausted where there is found to be a rational basis for the conclusions reached by that administrative body. Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260; Rochester Telephone Corp. v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147. As was stated by the Supreme Court in Alton Railroad Company v. United States, 315 U.S. 15, 23, 62 S.Ct. 432, 437, 86 L.Ed. 586:

"The weighing of such evidence involves in part a judgment based on the characteristics of the highly specialized transportation service involved. Thus, as we have said, that function is peculiarly one for the Commission not the courts."

■ Nor are we concerned with the correctness of the reasoning of the Commission or the wisdom of its conclusions. Virginian Railway Company v. United States, 272 U.S. 658, 47 S.Ct. 222, 71 L.Ed. 463.

In the face of these universally recognized principles, Virginia Stage now virtually seeks a new trial in contrasting for us the relative merits of a transfer of the operating rights to it as compared to a transfer to Carolina Coach. For example, on the one hand we are told, inter alia, that the rights sought to be acquired by Virginia Stage would make possible a closely coordinated operation between Norfolk and New York, and involve a distance 12' miles shorter than the route acquired by Carolina Coach between the same points. On the other hand, Carolina Coach has air-conditioned busses which make for greater passenger comfort, and owns terminals at Petersburg and Suffolk, and with another, jointly owns a terminal at Norfolk. Virginia Stage has ampler connecting facilities to the North and West; Carolina Coach has a like advantage to the South and Southeast.

■ But the balancing and set-off analysis of these and the other relevant factors is the very problem which the Commission was called upon to decide and it is not within the province of this Court to substitute its judgment, upon this difficult and complex question of transportation, in place of the expert administrative judgment of the Commission. The desirable doctrine of administrative finality would become sterile if we were to permit a relitigation de novo in this Court of the facts and conclusions reached by the Commission. Suffice it to say that we have carefully examined the record and while fully cognizant of the advantages of a transfer to Virginia Stage, we have also found reciprocal relative merit in a transfer to Carolina Coach which constitutes "sufficient evidence" and justifies our affirming the action of the Commission in approving the sale to Carolina Coach.

■ Virginia Stage contends further, however, that the order of the Commission hinges upon an error of law in that the Commission acted on the assumption that

it was without power to approve a "split" route and committed itself to a blind adherence to one of its previous decisions concerning such "splits". See H. P. Welch Co., 25 M.C.C. 558. The fallacy in this argument is that it assumes that the decision of the Commission rested on a belief in its lack of power to approve a "split" of operating rights and that had it recognized the power to do so (which petitioner contends it possesses) it would have decided otherwise. The record does not justify this assumption. A sound decision of the Commission cannot be condemned simply because it is in harmony, rather than in conflict, with a previous decision of the Commission. Although the Commission is not bound to be consistent in its rulings, Virginian Railway Company v. United States, 272 U.S. 658, 47 S.Ct. 222, 71 L.Ed. 463, Western Paper Makers' Chemical Co. v. United States, 271 U.S. 268, 46 S.Ct. 500, 70 L.Ed. 941, there is certainly no legal requirement that the decisions of the Commission be inconsistent. And we are not aware of any rule of law that makes chaos and conflict compulsory. Surely nothing prohibited the Commission from merely referring to and incorporating in its instant decision its own ruling in a previous decision, if it wished to avoid the repetition and prolixity attendant upon a restatement of the considerations supporting its action.

We are not persuaded by the argument of counsel that the Commission has thereby fallen into the alleged grievous error of rigidity by succumbing to the "pressure brought to bear on all administrative tribunals" in purportedly sacrificing the virtues of flexibility, which are the basis of the delegation of all legislative power, for an assumed usurped judicial theory of stare decisis. The notion that only a court (if anyone) can "discover" and "announce" rules of law which are immutable principles to be plucked from the sky and applied with inexorable logic is a philosophy of jurisprudence to which this Court does not subscribe.

■ It would rather seem to us that the policy of preventing duplication of service and congestion of the highways by disapproving "split routes" is a matter affecting transportation conditions which the Commission may properly consider; but it is only one of the many factors the importance of which the Commission in its expert judgment is eminently qualified to determine and to appraise. Accordingly, this is quite a different situation from that presented in Perkins v. Elg, 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320 where the Supreme Court held that, although the Secretary of State has complete discretion in the issuance or denial of a passport, he may not properly deny a passport upon the *sole* ground of a legal position which is shown to be erroneous.

■ The function of "weighing" the evidence, therefore, remains peculiarly one for the Commission "appointed by law and informed by experience", and not for the courts. Alton Railroad Company v. United States, 315 U.S. 15, 62 S.Ct. 432, 86 L. Ed. 586; Gray v. Powell, 314 U.S. 402, 62 S.Ct. 326, 86 L.Ed. 301. This is in accord with the realization that the regulation of transportation involves various economic factors and the exercise of an empirical judgment, since "The stuff of the process is fluid and changing—the resultant of factors that must be valued as well as weighed, Congress has therefore delegated the enforcement of transportation policy to a permanent expert body and has charged it with the duty of being responsive to the dynamic character of transportation problems." Board of Trade of Kansas City v. United States, 1942, 314 U.S. 534, 546, 62 S.Ct. 366, 372, 86 L.Ed. 432.

■ Accordingly, aware of our duty in the proper case to set aside an order of the Commission which is not supported by substantial evidence or which is clearly based on an error of law, we refuse to accept the allegations of Virginia Stage in place of the conclusions of the Commission, since we find no patent reversible error wherein the Commission has transgressed. United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971.

In conclusion, we wish to note that one of the Commissioners dissented from the majority of the Commission on the ground that it was not within the purview of the Commission to choose between the two contracts submitted to it. His theory was that the responsibility of the Commission extended no further than to approving or disapproving, as being in the public interest or not, specific contracts which are submitted to it. Inasmuch as this point was specifically disavowed by Virginia Stage in the argument before the Court and a disposition of the issue is not necessary to the decision we have reached in this.

case, we do not herein pass upon the views of the Commission in this respect.

We, accordingly, decline to set aside, or to enjoin the enforcement of the order of the Interstate Commerce Commission, and the civil action of Virginia Stage is dismissed.

Action dismissed.