## EVANS v. UNITED STATES et al.

No. 145.

District Court, W. D. Virginia, at Danville.

March 30, 1946.

184

R..Paul Sanford, of Danville, Va., for plaintiff.

Wendell Berge, Asst. Atty. Gen., Edward Dumbauld, Sp. Asst. to the Atty. Gen., and R. Roy Rush, Asst. U. S. Atty., of Roanoke, Va., for the United States.

E. M. Reidy, Asst. Chief Counsel, Interstate Commerce Commission, and Allen Crenshaw, Atty., Interstate Commerce Commission, both of Washington, D.C., for Interstate Commerce Commission.

Before DOBIE, Circuit Judge, and PAUL and BARKSDALE, District Judges.

BARKSDALE, District Judge.

This is an action instituted by the plaintiff, Otis Evans, trading and doing business as Otis Evans Truck Line, against the United States of America and the Interstate Commerce Commission, under the authority of 28 U.S.C.A. §§ 41(28), 46, 47, and 48, to set aside and annul an order of the Interstate Commerce Commission dated March 29, 1945, denying plaintiff's application for a certificate as a motor carrier which he sought under the authority of the "grandfather clause" of section 206(a) of the Interstate Commerce Act as amended, 49 U.S.C.A. § 306(a). With regard to this case, the pertinent language of the "grandfather clause" is as follows: " * * * Provided, however-er, That subject to section 210, if any such carrier * * * was in bona fide operation as a common carrier by motor vehicle on June 1, 1935, over the route or routes or within the territory for which application is made and has so operated since that time, * * * the Commission shall issue such certificate without requiring further proof that public convenience and necessity will be served by such operation, and without further proceedings, if application for such certificate was made to the Commission as provided in paragraph (b) of this section and within one hundred and twenty days after this section shall take effect, * * *".

History of the Case.

On February 1, 1936, the plaintiff filed his timely application for a certificate under the "grandfather" clause, accompanied by affidavits of certain shippers, seeking authority to transport by motor vehicle a variety of commodities over irregular routes between a number of shipping points in various states. After informal proceedings, a so-called "compliance order" was issued by the Commission dated May 12, 1938, granting authority to transport certain commodities between shipping points in certain specified territory. A protest being filed, certain additional evidence was presented informally by ap-

plicant, a further informal conference was held with him, and another compliance order dated March 20, 1939, was issued, granting wider authority to the plaintiff, although excluding certain commodities included in the prior order. On April 28, 1941, a certificate of public convenience and necessity was issued to the applicant by the Commission. On October 8, 1941, applicant, by his attorneys, filed a petition praying for a vacation of the certificate of April 28, 1941, and that he be granted a much more comprehensive certificate, alleging that he had always been entitled to more comprehensive rights, but that through ignorance and lack of counsel he had not insisted on as much as he was entitled to. By order of July 20, 1942, the Commission cancelled the certificate of April 28, 1941, and set down for hearing the applicant's petition for broader rights. A hearing was had before Examiner McCaslin in Winston Salem, N. C., on April 28–29, 1943, at which the applicant and his counsel and certain protestants and their counsel were present, and evidence was taken. A further hearing was held before Examiner Yardley at Winston Salem, N. C., on November 4, 1943, at which the applicant and his counsel and certain protestants and their counsel were present, and evidence was taken.

On January 19, 1944, Examiner Yardley made his report and recommended that the applicant be granted a certificate under the "grandfather clause" authorizing the transportation of certain commodities between certain points. The applicant filed exceptions to this report, and on March 29, 1945, Division 5 of the Commission filed a very comprehensive report or opinion finding " * * * that applicant has failed to establish the right to a certificate under the 'grandfather' clause of section 206(a) of the Interstate Commerce Act, authorizing operations, in interstate or foreign commerce, as a common carrier by motor vehicle of any of the commodities between the points claimed in the amended application, and that the application should be denied."

An order was entered carrying out the findings of Division 5. Plaintiff then filed a petition before the entire Commission for review of the decision of Division 5, which was denied on October 1, 1945. Shortly thereafter, this action was instituted, and the effective date of the Commission's order denying a certificate to plain-

tiff has been deferred from time to time by the Commission's orders, pending hearing, which was held at Lynchburg on March 14, 1946.

The United States, in its answer, raised the question of venue, but this contention was withdrawn at the bar of this court upon the assurance of plaintiff's counsel that the plaintiff was a resident of this District.

Also at the bar of this Court the plaintiff, by counsel, although not conceding the correctness of its conclusions, admitted that the determination by the Commission of his rights as to transportation of numerous commodities between various shipping points was final, and not reviewable by this Court, and therefore withdrew all claims asserted in plaintiff's petition except his claims for authority to transport—

"Wool in Bags or Bales, Greased and Scoured

"From Philadelphia to Spray and Leaksville, North Carolina.

"New Furniture

"From Stoneville, North Carolina, to New York, New York, Oxford and Philadelphia, Pennsylvania, East Rutherford and Camden, New Jersey.

"Wool in Bales or Bags, Wool Waste and Clippings, Wool Yarn in Bales and Wool Floss

"From Philadelphia, Manayunk, and Bridgeport, Pennsylvania, and Camden, New Jersey, to Leaksville and Spray, North Carolina."

Plaintiff, by counsel, contends that the action of the Commission in denying him a certificate for the transportation of the commodities named above between the said shipping points is arbitrary and without evidence to support it, as it is his contention that all the evidence in the case establishes this right. The defendants urge that a consideration of all the evidence demonstrates that the action of the Commission was fully justified.

### Applicable Legal Principles.

In the consideration of the rather narrow issue here presented, certain well established legal principles should be borne in mind.

 As the Motor Carrier Act is remedial, and the "grandfather" clause confers a special privilege, this privilege should be extended only to carriers plainly within its terms. An applicant seeking

the benefits of the "grandfather" clause is required to show compliance with all the statutory requirements. Gregg Cartage Co. v. United States, 316 U.S. 74, 83, 62 S.Ct. 932, 86 L.Ed. 1283; Akin v. United States, D.C. 62 F.Supp. 391, 396. The burden of establishing his right to the statutory grant is upon the applicant. Alton Railroad Co. v. United States, 315 U.S. 15, 25, 62 S.Ct. 432, 86 L.Ed. 586; Ready Truck Lines v. United States, D.C., 42 F. Supp. 970, 972, affirmed per curiam, 314 U.S. 580, 62 S.Ct. 176, 86 L.Ed. 470. It is the function of the Commission, and not of the Court, to pass upon the weight and credibility of evidence. United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 484, 490, 62 S.Ct. 722, 86 L.Ed. 971; Alton Railroad Co. v. United States, supra; Virginia Stage Lines v. United States, D.C., 48 F.Supp. 79, 83.

"With regard to judicial review of the decisions and orders of the Commission, it is well settled that the court's function is exhausted where there is found to be a rational basis for the conclusions reached by that administrative body. Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260, Rochester Telephone Corp. v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147." Virginia Stage Lines v. United States, supra, D. C., 48 F.Supp. 82.

### The Evidence.

Although the applicant has now withdrawn his claims for transportation rights as to all commodities except wool and new furniture, between certain points, it is nevertheless right and proper to consider all the evidence in the record in order to see the case in its proper perspective. The oral testimony of the applicant and his witnesses is generally vague and indefinite. As to his documentary evidence, it is euphemistic to say that many irregularities appear therein. Indicia of actual alteration of documents are numerous. The following few examples are illustrative:

Certain so-called check stubs, actually memoranda originally attached to checks of Chatham Manufacturing Company, Elkin, N. C., showing the account for which the check was drawn and detached by the applicant as payee, were introduced by him as proof of shipments, as "Exhibit 27" in the record. One of them bears the date, "May 22, 1934", obviously placed thereon by a rubber stamp. The Assistant Secretary of this Company testified, "We never rubber stamped checks as to date." A similar stub bears the notation, "Invoice 10/5/34". On the same document, the figure "4" appears in the first line. The same witness testified that the two figures "4" were made by different typewriters. The second "4" is so different from the first "4" that the difference clearly appears from an inspection of the photostatic copy appearing in the record before us.

With regard to certain bills of lading introduced by the applicant to show shipments to Mount Airy Furniture Company, at Mount Airy, N. C., one of the partners of this firm testified that a bill of lading bearing date February 27, 1934, showed the number, "14794", while another bill of lading dated exactly one year later, February 27, 1935, showed the number "14787", that is, seven numbers smaller than the bill of lading dated the previous year. This witness testified that they numbered their bills of lading consecutively, and therefore the later bill of lading should have borne a number much larger than the earlier one. He said that, in his opinion, it would not be possible for a bill of lading issued a year earlier than a later one, to bear a larger number. The same witness testified that in these bills of lading there appeared duplicates of ticket No. 16185, one of them dated September 22, 1934, and the other one dated September 22, 1935. Being identical in all other respects, it is obvious that the date of one was changed in order to provide proof of two shipments.

The same witness testified that amongst these bills there was one which showed a shipment of furniture on January 30, 1935, to Michigan Furniture Company, although his company's records showed that, "That shipment was not made by us". This witness also testified that, amongst these bills, one showed a shipment by his company to Hecht Brothers, Baltimore, on February 22, 1935. The witness testified that no such shipment appeared at any time between December 21, 1934, and March 1, 1935.

A witness, J. W. Scott, shipping clerk of Mount Airy Chair Company, Mount Airy, N. C., testified that the records of his company showed no shipments handled by applicant for his company in 1935, although applicant had introduced certain freight bills of lading showing shipments hauled for this company in that year. As to bill No. 1, No. 5979, bearing date

"2/16/35", introduced into the record by the applicant, the witness found in his files carbon copy, No. 3, bearing the same identical number, "5979", which was dated "12/16/36". The two copies were identical in every particular except the date.

The same witness discovered while on the witness stand that the "No. 1" original of bill No. 5984, bearing date February 16, 1935, introduced by the applicant, was identical in every respect except the date with the "No. 3" carbon copy in the witness' file which bore the date of December 16, 1936.

The applicant introduced bills of lading showing shipments of new furniture from Stoneville, N. C., to northern points. He listed 16 shipments of such furniture in 1934, 15 in 1935, 17 in 1936, 10 in 1937, 14 in 1938, and 16 in 1939, a total of 88. Of these bills of lading, 31 bore the following stamp:

"This shipment is tendered and received subject to the terms and conditions of the company's uniform bill of lading effective June 15, 1941.

Shipper's Signature. Agent's Signature."

The obvious strangeness of this is that shipments which purported to have moved during the years 1934-1939 should bear a stamp which could not conceivably have been in existence prior to June 15, 1941. An agent of the shipper testified that his company had never possessed such a stamp, and certainly did not place any such stamp on these bills. The applicant admitted possession of such a stamp, but denied any knowledge of how or by whom the stamp was placed on the bills. The only explanation suggested by applicant's counsel is that someone might have put this stamp on the bills thoughtlessly or as a prank. In the light of clear evidence of alteration of other documents, it would seem more reasonable to suppose that the shipments actually moved subsequent to June 15, 1941, and the prior dates were later inserted by the applicant or someone for him, as it appeared that the bills had always been in the possession of the applicant, his former attorney, or the Commission.

The instances just mentioned by no means constitute a complete summary of irregularities and inconsistencies: others of a similar character also appear in the record.

As to the commodities to which plaintiff still contends he should be granted transportation rights, the situation seems to be as follows:

### Wool.

Although applicant presented some evidence to substantiate his claim for "grandfather" rights to the transportation of wool, it appears that applicant's first mention of wool in the record is in his affidavit filed with the Commission on March 6, 1939, and is as follows: "10. Changes in operations or interruptions in service, if any: Prior to June 1, 1935, and until about a year ago, applicant also transported several commodities including wool, for other motor carriers. The wool was transported from Philadelphia, Pa., to Leaksville, N. C. Applicant participated in the solicitation of some of this traffic, but payment of the transportation charges was made to other carriers, who in turn compensated the applicant for the transportation services actually rendered by him. About a year ago applicant began transporting wool from Philadelphia, Pa., to Leaksville and Elkin, N. C., as a service rendered direct for the shippers. It is the contention of applicant that inasmuch as he was transporting wool prior to June 1, 1935, and continuously since that date, he is entitled to a 'grandfather' right to transport wool from Philadelphia, Pa., to Leaksville and Elkin, N. C. He, therefore, desires this part of his operation to be considered along with those described in paragraph 8 hereof as constituting his 'grandfather' operations."

It is obvious from this statement that, at the critical date, June 1, 1935, any transportation of wool then engaged in by applicant was for other motor carriers, and it is well settled that hauling by one motor carrier for another does not create multiple "grandfather" rights. Both carriers cannot claim credit for such shipments. As to such shipments as mentioned in applicant's affidavit, the carrier who controlled the shipments and who was responsible to the shippers and the public, was entitled to credit, and not this applicant. Thomson v. United States, 321 U.S. 19, 64 S.Ct. 392, 88 L.Ed. 513. It was well within the province of the Commission to accept the above quoted affidavit of the applicant at its face value.

Although the applicant has now withdrawn his claim for the right to transport wool to Elkin, N. C., it is interesting to

note that he asserted such a claim before the Commission and introduced evidence of numerous shipments of wool hauled by him during the years 1934 and 1935 to Chatham Manufacturing Company at Elkin, N. C. However, this was thoroughly discredited by the evidence of an official of that company that their records showed no shipments of wool whatever hauled by the applicant during the years 1934 and 1935.

■ It is our conclusion that the evidence amply justified the action of the Commission in denying the applicant's claim of the right to transport wool, as asserted by him.

### New Furniture.

The applicant also introduced some evidence tending to support his claim for "grandfather" rights in the transportation of new furniture from Stoneville, N. C., to Northern points. This evidence consisted of oral testimony, and certain bills of lading tending to show that the applicant was hauling new furniture from Stoneville to northern points at and before the critical date of June 1, 1935.

■ However, the oral testimony is quite vague and indefinite. As to the bills of lading, it has been heretofore mentioned that, of the 88 bills covering the period 1934–1939, 31 were questionable for the reason that they bore the stamp referring to the date of June 15, 1941. Applicant's counsel contends that, even if the 31 questioned bills should be disregarded, the remaining bills constitute uncontradicted evidence upon which "grandfather" rights should have been granted by the Commission. We do not agree. In the first place, it is a well recognized principle that, where a fact-finding body is satisfied that a witness has wilfully testified untruthfully in one particular, it may disregard his entire evidence. Here, the Commission would be fully justified if it concluded that 31 of these bills of lading had been wilfully altered. Besides, there is ample evidence of alteration of other documents adduced by the applicant.

■ But even if the 31 questionable bills of lading be simply disregarded, in our opinion the Commission would be justified in denying applicant's claim based upon the remaining bills of lading covering new furniture. If the 31 questioned bills should be eliminated, there would remain only bills showing 12 shipments in 1934, 8 in 1935, 11 in 1936, 6 in 1937, 8 in 1938, and 12 in 1939. It would be entirely within the province of the Commission to hold that shipments, so few in number, constitute only evidence of intermittent, sporadic or infrequent service, and fall short of proof of the "bona fide operation" mentioned in the statute, with its connotation that such service must be substantial and continuous. United States v. Carolina Freight Carriers Corp., supra, Peninsular Corporation of Seaford v. United States, D.C., 60 F.Supp. 174, Watson Brothers Transportation Co. v. United States, D.C., 59 F.Supp. 762, Beasley v. United States, D.C., 47 F.Supp. 468.

### Conclusion.

The record before us discloses that the plaintiff began trucking in a small way in 1931. On the critical date of June 1, 1935, he owned and operated one tractor-trailer unit and one straight truck. Upon his application, supported by his own statements and ex parte affidavits of others, he was granted temporary "grandfather" rights, and on April 28, 1941, he was granted a fairly comprehensive "grandfather" certificate. Not being satisfied with this, he petitioned the Commission to cancel this certificate and grant him more extensive rights. This led to hearings and the taking of evidence, upon which, in our opinion, the Commission was fully justified in denying him any "grandfather" rights at all. That the Commission fully and fairly considered plaintiff's claims, clearly appears from the report of Division 5, filed March 29, 1945, and later approved by the full Commission.

It therefore follows that an order will be entered affirming the order of the Commission and dismissing the complaint at plaintiff's costs.