**BLACK BALL FREIGHT SERVICE,** Consolidated Freightways Corporation of Delaware, and Garrett Freightlines, Inc., Plaintiffs,

v.

**UNITED STATES** of America, Defendant,

and

Interstate Commerce Commission and Ashworth Transfer, Inc., Intervening Defendants.

Civ. No. 3750.

United States District Court
D. Idaho, S. D.
Sept. 24, 1963.

Maurice H. Greene, Boise, Idaho, William B. Adams, Portland, Or., for plaintiff.

Robert W. Ginnane, Gen. Counsel, Francis A. Silver, Asst. Gen. Counsel, I.C.C., Washington, D. C., Sylvan A. Jeppesen, U. S. Atty., Boise, Idaho, for defendants.

Edward T. Lyons Jr., Jones, Meiklejohn, Kilroy & Kehl, Denver, Colo., Givens, O'Leary, Doane & Givens, Boise, Idaho, for intervenor.

Before KOELSCH, Circuit Judge, and CLARK and WALSH, District Judges.

PER CURIAM.

This is an action to enjoin and set aside the order of the Interstate Commerce Commission, (hereinafter "Commission"), dated November 15, 1961, in its Finance Docket No. MC–F–7033, Ashworth Transfer, Inc.—Control—Hawkes Transportation Co., Inc., authorizing the acquisition by Ashworth Transfer, Inc., of Salt Lake City, Utah, (hereinafter "Ashworth"), of Hawkes Transportation Co., Inc., of Boise, Idaho, (hereinafter "Hawkes"), through purchase of capital stock and, in turn, by Rulon C. Ashworth, Josephine G. Ashworth, Rulon C. Ashworth, Jr., and Ralph G. Ashworth, through such acquisition of control.[1]

Authority for the action and the governing procedures are to be found in

---

1. The decision of the Commission is reported in 87 M.C.C., at page 653 et seq. What is set out herein in the nature of a statement of the case, is adopted largely from the brief of defendant United States of America and the intervening defendant Interstate Commerce Commission, since neither plaintiffs nor Ashworth take exception in any important particular to the Statement of the Case made in such brief.

sections 1336, 1398, 2284, and 2321–2325, inclusive, of Title 28 United States Code, section 17(9) of the Interstate Commerce Act (49 U.S.C. § 17(9), hereinafter "the Act"), and section 10 of the Administrative Procedure Act, (5 U.S.C. § 1009). The United States of America is named a party defendant pursuant to the provisions of section 2322 of Title 28 U.S.C., and the Commission and Ashworth were permitted by this Court to intervene pursuant to the provisions of section 2323 of Title 28 U.S.C.

On November 6, 1958, Ashworth filed an application with the Commission for authority under section 5 of the Act to acquire control of Hawkes through purchase of its capital stock. In the same application, Rulon C. Ashworth, Josephine G. Ashworth, Rulon C. Ashworth, Jr., and Ralph G. Ashworth, who control Ashworth through ownership, in the aggregate, of all its outstanding stock, sought authority under the same section to acquire control of Hawkes through the transaction. The application was opposed by plaintiffs herein and others. A hearing was held on the application at Boise, Idaho, on February 25, 1959, before an examiner of the Commission, at which time evidence was received in behalf of the application and from protestants in opposition to the grant of the requested authority. At the close of applicants' presentation, counsel for protestants moved for dismissal of the application, pointing out that no showing had been made on behalf of Hawkes, the transferor, and that the Commission's order assigning the hearing ordered that "applicants shall make available at the hearing a competent witness or witnesses for examination on all material and relevant facts recited in the application". On May 12, 1959, the hearing examiner submitted his recommended report and order approving the application.

Exceptions to the examiner's recommended report and order were filed by plaintiffs on June 15, 1959. On the same day protestants, including plaintiffs herein, filed a petition for further hearing for the purpose of enabling the production of the testimony of Y. J. Palmer, president of Hawkes, and for inquiry of Ashworth concerning "apparent" different evidence it presented before the Public Utilities Commission of Idaho in Hawkes' application to have the Idaho intrastate authority transferred to Ashworth, such evidence relating to when Ashworth assumed control of Hawkes. Over the protest of Ashworth, the Commission on February 15, 1960, reopened the proceeding "for the purpose of providing all parties to the proceeding an opportunity to submit, not later than March 21, 1960, affidavits by Y. J. Palmer, stating in detail his dealings with Rulon C. Ashworth, Jr., Ralph G. Ashworth, Ashworth Transfer, Inc., and Hawkes Transportation Co., Inc., which were found by the examiner to have resulted in unlawful control of Hawkes Transportation Co., Inc., in a common interest with Ashworth Transfer, Inc.".

Thereafter, on March 28, 1960, Ashworth filed with the Commission an affidavit of Y. J. Palmer executed on March 19, 1960, at Norfolk, Virginia. Copies were served on all parties to the proceeding. On April 15, 1960, protestants, including plaintiffs herein, filed with the Commission a petition seeking modification of the order of February 15, 1960, so as to provide for further hearing and for the issuance of a subpoena to Y. J. Palmer commanding him to attend and give testimony at such hearing. It was stated in the petition that Palmer would not cooperate with protestants and would not voluntarily give an affidavit such as was described in the order of February 15, 1960. The petition was opposed by Ashworth. Subsequently, on April 28, 1960, protestants filed a supplemental petition seeking further hearing and for the issuance of subpoenas to Ezra M. Hawkes and Jerry Hawkes of Pocatello, Idaho. The petition sought to have the further hearing held in two places, Norfolk, Virginia, and Pocatello, Idaho. Ashworth seasonably filed objections to the supplemental petition.

On August 31, 1960, the Commission, Division 4, denied the application of Ash-

worth to acquire control of Hawkes on the ground that the transaction had not been shown to be consistent with the public interest. The report of the Commission, Division 4, also denied the protestants' petitions for further hearings, in view of the conclusions reached regarding Ashworth's application. On November 15, 1961, the entire Commission, on reconsideration, reversed the findings made by Division 4 and entered the order under attack here authorizing acquisition by Ashworth of control of Hawkes, through purchase of capital stock, subject to specified conditions.

Before entering upon a consideration of the particular contentions made by plaintiffs as bases for asking that we set aside the order of the Commission, it might be well to refer to the statutory provisions with which we are concerned, viz.: those contained in section 5 of the Act relating to combinations and consolidations of carriers. Insofar as material herein, section 5(2) (a) provides;

"It shall be lawful, with the approval and authorization of the Commission, as provided in subdivision (b) *. * *

"(i) * * * for any carrier * * * to acquire control of another through ownership of its stock or otherwise; * * * or for a person which is not a carrier and which has control of one or more carriers to acquire control of another carrier through ownership of its stock or otherwise; * * *."

Section 5(2) (b), insofar as material herein, provides:

"Whenever a transaction is proposed under subparagraph (a) * * * the Commission * * * shall afford reasonable opportunity for interested parties to be heard. * * * If the Commission finds that, subject to such terms and conditions and such modifications as it shall find to be just and reasonable, the proposed transaction is within the scope of subparagraph (a) and will be consistent with the public interest, it shall enter an order approv-

ing and authorizing such transaction, upon the terms and conditions, and with the modifications, so found to be just and reasonable: * *."

Section 5(2) (c), insofar as material herein, provides:

"In passing upon any proposed transaction under the provisions of this paragraph (2), the Commission shall give weight to the following considerations, among others: (1) The effect of the proposed transaction upon adequate transportation service to the public; * * *."

■■ It is appropriate, also, at this point to advert to some principles which control the scope of our review power in the case. We may not modify or set aside the Commission's order if it lies within the scope of its statutory authority and is based on adequate findings, which in turn are supported by substantial evidence on the record as a whole. McLean Trucking Co. v. United States, 321 U.S. 67, 88, 64 S.Ct. 370, 88 L.Ed. 544, 557; Rochester Telephone Corp. v. United States, 307 U.S. 125, 146, 59 S.Ct. 754, 83 L.Ed. 1147; Interstate Commerce Commission v. Union Pacific R. Co., 222 U.S. 541, 547, 32 S.Ct. 108, 56 L.Ed. 308; West Brothers, Inc. v. United States, 203 F.Supp. 839 (U.S. D.C., S.D.Miss., 1962). Further, in cases of the type here before us, where the Commission is charged with the responsibility of determining whether a transaction presented for approval under section 5 of the Act is consistent with the public interest, it is the wisdom and experience of the Commission, not that of the court, which must determine whether the transaction is consistent with the public interest. McLean Trucking Co. v. United States, supra; Virginia Stage Lines, Inc. v. United States, 48 F.Supp. 79, 82 (U.S.D.C., W.D.Va., 1942).

Plaintiffs' first attack upon the Commission's order is a challenge of the sufficiency of the evidence in the record to justify the action of the Commission in permitting Hawkes, upon consummation of the control transactions, to continue to possess and exercise operating rights

previously granted to it by the Commission authorizing it to transport explosives from points in Idaho to points in Washington. In terms, the challenge is based upon plaintiffs' claim that the evidence before the Commission as to Hawkes' operations in the period deemed material by the Commission disclosed only one shipment of explosives *from* Idaho to Washington; and the further contention that the Commission erroneously concluded from the evidence of that single shipment that Hawkes had been sufficiently engaged in transporting explosives *from* Idaho to points in Washington to authorize the Commission to permit Hawkes, upon consummation of the control transactions, to retain its rights to transport explosives *from* Idaho to Washington.

Hawkes, at the time of the hearing, held two certificates of public convenience and necessity issued to it by the Commission on September 30, 1956, and June 10, 1958, respectively, authorizing it to operate as a motor common carrier over irregular routes in the transportation of (1) building materials, *Class A and Class B explosives* and heavy machinery *between* points in *Idaho,* on the one hand, and, on the other, points in Montana *and Washington,* and (2) of Class A and Class B explosives and blasting materials between the site of the plant of the E. I. DuPont de Nemours & Co. at or near DuPont, Washington, and a magazine site at or near Ravensdale, Washington, on the one hand, and, on the other, points in Montana and Oregon, with certain restrictions. It also held similar intrastate authority in Idaho.

On the hearing before the examiner, Ashworth presented an exhibit—Exhibit 11—listing some 345 shipments transported by Hawkes between July 7, 1955 and December 1, 1958, having available in the hearing room for inspection and analysis by protestants, the underlying freight bills supporting the Exhibit. The Commission, on reconsideration, refused to consider 237 of the shipments listed in Exhibit 11 and related to the period prior to January 1958, because of re-

moteness in time and because the Commission considered that the witnesses presented by Ashworth for cross-examination thereon were not qualified to testify to operations performed by Hawkes prior to January 1958. As to the remaining 108 shipments listed in Exhibit 11, the Commission held that the available witnesses were sufficiently qualified to testify with regard thereto and, analyzing such shipments, it found that in the period January 7 through December 1, 1958, Hawkes transported

> "(2) under its explosives authority (a) 31 shipments of explosives, of which 30 moved from DuPont, including 28 points in Idaho, 1 to Monida, Mont., and 9 to points in Oregon, with 1 interline shipment from Boise to Bangor, Wash., and (b) 9 shipments of ammunition, of which 5 moved in interline with Transfer (Ashworth) from Boise to 2 points in Washington, 3 moved in interline with IMF from Walla Walla, Wash., to Gowen Field, Idaho, (near Boise), and 1 moved from McChord Air Force Base, Wash., to Boise;"

The Commission concluded, and stated in its Report, that

> "From an analysis of the shipments moved by Transportation (Hawkes) under its authority in 1958, and giving consideration to the area it is authorized to serve, its resources and facilities, the fact that it is an irregular-route carrier of specified commodities, the testimony of its supporting shipper, (DuPont) * * * it is evident that the service performed by Transportation (Hawkes) under its rights has been limited to that involving the movement * * * (2) of explosives from DuPont to points in Union, Baker, and Malheur Counties, Oreg., and between points in Idaho, on the one hand, and, on the other, points in Washington * * *."

In accordance with its conclusions, the Commission required that, if the transaction were consummated, and concur-

rently therewith, the operating rights of Hawkes "shall be modified so as to authorize only the transportation set forth in the appendix hereto". With the modification set out in the appendix, Hawkes was authorized to perform transportation of Class A and Class B explosives over irregular routes between points in Idaho, on the one hand, and, on the other, points in Washington.

As stated above, plaintiffs contend that the Commission erred "in finding upon one shipment handled" and concluding upon such finding that Hawkes had been sufficiently engaged in transporting explosives from Idaho to points in Washington and that the proposed transfer of such explosives authority under the control of Ashworth was consistent with the public interest. But it is clear from the record that the Commission did not base its findings "upon one shipment handled". Hawkes was authorized by its certificate to transport explosives *between* Idaho and Washington and the Commission found and took into consideration that from January 7 through December 1, 1958, Hawkes handled 30 shipments of explosives *between* Idaho and Washington. It is true that in detailing Hawkes movements of explosives, the Commission noted the shipments which had moved from Idaho to Washington, but the Commission was not required to and did not isolate or fragmentize the Idaho to Washington explosives shipments from the remainder of the explosives shipments Hawkes handled in the area which it was authorized to serve, i. e., between Idaho and Washington. Further, even if it would have been proper for the Commission to consider only shipments transported from Idaho to Washington, the Commission found that there were 6 of such ship-

ments, rather than 1 as plaintiffs contend, viz.: 1 shipment, Boise to Bangor, Washington, and 5 additional shipments, Boise to 2 points in Washington.[2]

Besides taking into account the explosives shipments Hawkes handled between Idaho and Washington, the Commission gave consideration to the area Hawkes was authorized to serve; to the abilities, resources and facilities possessed by Hawkes; and to the fact that Hawkes is an irregular-route carrier of specified commodities, performing a non-scheduled service on a call-and-demand basis. It considered, also, the support which Hawkes received in the testimony of a representative of DuPont, a shipper. The Commission weighed the evidence offered by plaintiffs in opposition to the acquisition. It considered the effect which the acquisition, if approved, would have competitionwise with respect to the protestants, and benefitwise with respect to the shipping public.

Precisely what weight the Commission gave to any of this evidence, we have no way of knowing, nor are we charged with ascertaining. What does concern us is whether, from all that was before the Commission regarding Hawkes' explosives operations between Idaho and Washington, a reasonable mind might have found adequate basis to support the conclusions: (1) that Hawkes' operations in the transportation of explosives between Idaho and Washington had been substantial and continuous; (2) that Hawkes had held itself out to handle all explosives traffic possible between Idaho and Washington, commensurate with its facilities and abilities; and (3) that the acquisition, if approved, would be consistent with the public interest. Consolidated Edison Co.

2. As to the 5 shipments from Boise to 2 points in Washington, the same involved ammunition and plaintiffs make point of the fact that some ammunition is classified as Class C explosives and that the record herein does not show that the ammunition was not Class C and, hence, outside of Hawkes' certificate. We think it proper to presume, as the Commission

apparently did, that Hawkes obeyed the law and transported only the classes of explosives which its certificate authorized. We point out, too, that plaintiffs did not make this contention at the hearing before the examiner. In fact, there counsel for plaintiffs stated that ammunition is the same as explosives. (Transcript, page 100).

of New York v. National Labor Relations Board, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126, 140. Holding, as we do, that there is a rational basis in the evidence for the conclusions reached by the Commission, we find that plaintiffs' first ground of attack on the order of the Commission can not be sustained.

As mentioned earlier, the order of the Commission assigning the application of Ashworth for hearing before an examiner provided that "applicants shall make available at the hearing a competent witness of witnesses for examination on all material and relevant facts recited in the application". With regard to some data and information pertaining to Hawkes and contained in the application, it appears that Y. J. Palmer, president of Hawkes, would be the only person qualified to testify at the hearing. However, it was stated in Exhibit A to the Ashworth application that, about November 1, 1958, Palmer had left Idaho for parts unknown and applicants had not been able to obtain any information as to his whereabouts. Palmer did not appear as a witness at the hearing and Rulon C. Ashworth, Jr., questioned by the examiner, testified that when informed that Palmer intended to leave Idaho, he made every possible effort to persuade Palmer to remain and help with the acquisition proceedings; and that failing to persuade him to remain, he was unsuccessful in trying to ascertain from Palmer where he might be reached if he was needed for information pertinent in the acquisition proceedings. Plaintiffs now assert, in their attack on the order of the Commission, that the Commission "erred in approving the proposed transaction without requiring Hawkes Transportation to supply a competent witness concerning facts relating to that company".

It is undisputed that the Commission did not require Hawkes to supply any witness, competent or otherwise. The order relating to a competent witness or witnesses is directed to applicants and Hawkes is not a party to the application. The narrow question we have, then, is whether the Commission could lawfully approve the acquisition without requiring Hawkes to supply a competent witness with respect to information about itself. We hold the question must be answered in the affirmative.

The Commission has held in cases similar to that before us here that the failure to produce a witness or witnesses qualified to testify and stand cross-examination concerning the situation of the vendor carrier does not require the Commission to dismiss the application nor permit the Commission to refuse to decide the application on its merits. Mercury Motor Express, Inc.,—Consolidation—Carolina Southern Motor Express, Inc., 60 M.C.C. 427 (1954); Raymond Brothers Motor Transportation, Inc.,—Purchase—Berzel, 15 M.C.C. 477 (1938); Falwell Fast Freight, Incorporated—Purchase—Draper, 40 M.C.C. 127 (1945); Kenosha Auto Transport Corp.—Purchase—Frey, 55 M.C.C. 76 (1948); Marion Trucking Company, Inc.,—Purchase—Harwood Trucking, Inc., 50 M.C.C. 613 (1948). The reasoning of the Commission, as exemplified in the case last cited, Marion, is that under sections 5(2) (a) and 5(2) (b), supra, an application for Commission approval to acquire control of another carrier must be presented, as it was in this case, by the carrier seeking to acquire such control; and when so presented, the jurisdiction of the Commission is invoked and, unless the application be dismissed by the applicant, it is mandatory for the Commission to determine the application on its merits. We think the reasoning and the rulings of the Commission are sound and we hold that, having the duty in this case after the filing of Ashworth's application to determine the application on its merits, the Commission likewise had the power to so determine the application, regardless of the failure of Hawkes to provide a witness as to some of the data and information relating to it and contained in the application.

Plaintiffs' remaining ground of attack on the order of the Commission is that the Commission erred in refusing to

grant plaintiffs' petitions filed in June, 1959, and in April and May, 1960, for further hearing in the case.

 Authorities dealing with the question of the rights of petitioners for rehearings in cases like ours are numerous and the rule they establish is quite clear. Petitions for rehearings before administrative bodies are addressed to the discretion of such bodies; and if there can be said to be an exception to the rule, it must be only where a showing of the clearest abuse of discretion is made. Interstate Commerce Commission v. Jersey City, 322 U.S. 503, 514, 64 S. Ct. 1129, 88 L.Ed. 1420; United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 534, 66 S.Ct. 687, 90 L.Ed. 821, 834; Carolina Scenic Coach Lines v. United States, D.C., 59 F.Supp. 336, 337, aff'd. per curiam 326 U.S. 680, 66 S.Ct. 37, 90 L.Ed. 398; Eck Miller Transfer Co. v. United States, D.C., 143 F.Supp. 409, 411; Lang Transportation Corp. v. United States, D.C., 75 F.Supp. 915, 925.

So far as the petitions for further hearing in this case sought the production of Y. J. Palmer as a witness, there can be no dispute about the following: Not later than the time when applicants completed their presentation in the hearing before the examiner, plaintiffs knew that Palmer would not attend the hearing; as appears from questions addressed by plaintiffs' counsel to witness Ashworth (Tr., p. 147) and witness Grogan (Tr., p. 177), plaintiffs then had some information that Palmer was in Virginia; and plaintiffs knew that Palmer had full knowledge regarding all of Hawkes' operations for several years past and that, as the person who had dealt with the Ashworths in both the loan transaction and the transaction for acquisition of control of Hawkes, he had full knowledge of all details of such transactions. Nevertheless, plaintiffs made no request of the examiner for an adjournment or for a subpoena to procure Palmer's attendance but, after making a motion to dismiss the application which was denied, proceeded to present their case and submit the matter. The matter was submitted on February 25, 1959, and during the nearly three months intervening between submission and report by the examiner, plaintiffs made no request for reopening the proceedings in order to procure Palmer's evidence. Not until approximately one month after the examiner made his report and recommended a decision unfavorable to plaintiffs did they present their first petition for further hearing; and then the petition was remarkable for its vagueness. Though it stated that the whereabouts of Palmer was known, it gave no clue to the place of his whereabouts; there was no positive statement that Palmer would be subpoenaed if further hearing were granted; and there was neither a statement of what Palmer's evidence would be, if he did appear, nor was any reason given why such a statement could not be made.[3]

Notwithstanding the vagueness of the petition and the lack of diligence in its presentation, on February 15, 1960, the Commission did reopen the proceeding and gave all parties an opportunity to obtain from Palmer and submit affidavits regarding certain of Palmer's dealings with some of the Ashworths, Transfer, and Hawkes. Ashworth procured, filed, and served such an affidavit. Plaintiffs did not procure an affidavit but on April 15, 1960, filed a "Petition Seeking Modification of Order of February 15, 1960, So As to Provide Further Hearing and For Issuance of Subpoenas". In this petition, plaintiffs described their contact with Palmer, his failure to cooperate with plaintiffs or to furnish an affidavit, and they asked that the case be set down for further hearing and that a subpoena be issued to require Palmer's at-

---

3. The petition stated, also, as an additional reason for asking further hearing, that it was desired to examine Ashworth as to an apparent difference between its evidence before the examiner and its evidence before the Public Utilities Commission of Idaho; but there was no specification of the respects in which such evidence varied.

tendance. From a reading of the petition, it appears that although plaintiffs knew of the whereabouts of Palmer in June, 1959, their first attempt to contact him was nine months later, in March, 1960, and this by a letter to which no reply was received. The next attempt was made in April, 1960, by Washington, D. C., counsel for plaintiffs, by long-distance telephone from Washington to Norfolk, Virginia. No one on behalf of plaintiffs had ever contacted Palmer in person.

Plaintiffs' desire to procure the testimony of Ezra M. Hawkes and Jerry Hawkes was not disclosed until April 28, 1960, when the "Supplemental Petition Seeking Further Hearing and Issuance of Subpoenas" was filed. Plaintiffs had been aware of the existence and whereabouts of these prospective witnesses, and of the fact that they were connected with Hawkes at times pertinent in the case, since February 25, 1959. (Tr., p. 121). No more need be said about the Supplemental Petition than that it stated "on information and belief" petitioners' conclusion as to what the Hawkes' testimony would establish, but did not, as required by Rule 1.101(b) of the Commission's General Rules of Practice, state briefly the evidence to be adduced through the Hawkes.

Analyzing plaintiffs' efforts in this case for further hearing, there is brought to mind the admonition of the court in Interstate Commerce Commission v. Jersey City, supra, when it pointed out that administrative consideration of evidence always creates a gap in time between the time when the record is closed and the time the administrative decision is promulgated; and that if, upon the coming down of the decision, litigants may demand a rehearing as a matter of law because some new circumstance has arisen or some new fact has been discovered, there would be little hope that the administrative process could ever be consummated in an order that would not be subject to reopening. And there is brought to mind, also, the court's statement in the same case that administrative rehearings are not matters of right but pleas to discretion, and that the discretion to be exercised is that of the body making the order and not that of the reviewing body.

We find no abuse of discretion by the Commission in its denial of plaintiffs' petitions for further hearing.

The decision of the Interstate Commerce Commission is affirmed, and it is ordered that plaintiffs' complaint be, and it hereby is, dismissed.