**EDWARDS MOTOR TRANSIT COMPANY**

and

**The Greyhound Corporation (Eastern Greyhound Lines Division), Plaintiffs,**

v.

**The UNITED STATES of America**

and

**Interstate Commerce Commission, Defendants,**

and

**Capitol Bus Company, Intervening Defendant.**

Civ. A. No. 7268.

United States District Court
M. D. Pennsylvania.

Jan. 31, 1962.

Turney, Major, Markham & Sherfy, Washington, D. C., Nauman, Smith, Shissler & Hall, Harrisburg, Pa., for plaintiffs.

Lee Loevinger, Asst. Atty. Gen., Patrick M. Ryan, Attorney, Department of Justice, Washington, D. C., Bernard J. Brown, U. S. Atty., Scranton, Pa., for defendant United States.

Robert W. Ginnane, General Counsel, Francis A. Silver, Associate General Counsel, Interstate Commerce Commission, Washington, D. C., for defendant, Interstate Commerce Commission.

Wilson, Woods & Villalon, Washington, D. C., Robert H. Maurer, Harrisburg, Pa., for intervening defendant.

Before GOODRICH and KALODNER, Circuit Judges, and FOLLMER, District Judge.

FOLLMER, District Judge.

This Court was convened to hear and determine the merits of plaintiffs' claim that three Orders of the Interstate Commerce Commission (hereinafter called "Commission") should be enjoined, set aside and annulled. The first of the Orders was dated October 5, 1960, and granted a certificate of public convenience and necessity to Capitol Bus Company (hereinafter called "Capitol") authorizing it to operate, in interstate or foreign commerce, as a common carrier by motor vehicle, over regular routes, of passengers and their baggage, and of express and newspapers in the same vehicles with passengers, between Wilkes-Barre, Pennsylvania, and Elmira, New York, over certain specified highways, serving all intermediate points; the second Order was dated March 3, 1961, and denied the joint petition of Edwards Motor Transit Company (hereinafter called "Edwards") and The Greyhound Corporation (hereinafter called "Greyhound") for reconsideration; the third was the certificate of public convenience and necessity issued to Capitol on March 20, 1961, pursuant to Order No. 1, supra, dated October 5, 1960.

On February 24, 1959, Capitol filed with the Commission an application, which was assigned Docket No. MC–109736 (Sub-No. 12), in which Capitol sought to obtain a certificate of public convenience and necessity authorizing operation, in interstate or foreign commerce, as a common carrier by motor vehicle of passengers and their baggage, and express, mail, and newspapers in the same vehicle with passengers, (1) between Wilkes-Barre and Towanda, Pennsylvania, over U. S. Highway 309 and (2) between Waverly and Elmira, New York, over New York Highway 17, with service at all intervening points on both of the above-described routes. Edwards and Greyhound opposed the application.

The application was referred to an examiner for hearing and the recommendation of an appropriate order thereon together with the reasons therefor. Hearings were held at Wilkes-Barre on May

19, 20, 21, and 22, 1959, and at Washington, D. C., on June 29, July 1, 2, 8 and 9, 1959. On March 21, 1960, the examiner recommended that a certificate be issued upon compliance by Capitol with certain conditions. Greyhound and Edwards filed exceptions to the examiner's report and order, and Greyhound filed a petition for a further hearing.

On October 5, 1960, the Commission, Division 1, issued its report in which it found that the present and future public convenience and necessity required the proposed operation; that Capitol is fit, willing and able to perform such service and to conform to the requirements of the Act and the Commission's rules and regulations thereunder; and that a certificate authorizing such operations [1] should be granted, provided Capitol should first request in writing the concurrent cancellation of its certificate No. MC-109736 (Sub No. 9), which authorized operation between Waverly, New York, and Towanda, Pennsylvania, over U. S. Highway 309. An Order implementing the findings of fact and conclusions thereon was accordingly entered on October 5, 1960. Edwards and Greyhound filed their joint petition for reconsideration on November 30, 1960. On March 3, 1961, the entire Commission entered an Order denying the petition.

On March 20, 1961, the Commission issued to Capitol a certificate of public convenience and necessity authorizing the operation approved in its Report and Order of October 5, 1960. The certificate carried a paragraph revoking certificate No. MC-109736 (Sub No. 9).

In their complaint plaintiffs protested Capitol's application upon the following grounds: that the service they were then giving was more than reasonably adequate; that the issuance of applied for authority would permit applicant and other members of Trailways System to divert, to protestants' detriment, a substantial volume of present passenger traffic; that the facts of the case were not sufficient to justify Commission's application of close-the-gap doctrine; that the volume of traffic was not sufficient to justify competitive service. Plaintiffs also contended that as recently as January 5, 1959, or less than two months prior to the filing of the instant application, the Commission had denied a substantially identical application by the same applicant, Capitol, involving the same parties, same issues, and virtually the same evidence. Plaintiffs also aver that the principle, if not the doctrine, of res judicata was clearly applicable unless the Commission found a substantial change in facts and circumstances which would justify and support the findings and conclusions in the present application.

■■ The jurisdiction conferred upon three-judge statutory district courts to review orders of the Commission is very definitely circumscribed. If an order of the Commission lies within the scope of a statute which the Commission is authorized to administer and enforce, and if the order is based upon adequate findings, which in turn are supported by substantial evidence, the order may not be set aside by a court on review even though the court might disagree with the Commission's conclusions or might consider them contrary to the weight of the evidence. In Motor Freight Express v. United States et al., D.C.M.D.Pa., 1954, 119 F.Supp. 298, 303, the Court said:

"It is understood, of course, that we do not sit de novo in cases dealing with orders of the commission. On the contrary, the scope of review is limited by the doctrine of administrative finality. 'Only questions affecting constitutional power, statutory authority and the basic prerequisites of proof can be raised. If these legal tests are satisfied, the Commission's order becomes incontestable.' Rochester Telephone Corp. v. United States, 1939, 307 U.S. 125,

---

1. The final certificate covered the entire distance of one hundred three miles from Wilkes-Barre, Pennsylvania, to Elmira, New York, as distinguished from the application which only covered two unconnected portions, or as more fully hereinafter set forth in Note 2.

140, 59 S.Ct. 754, 762, 83 L.Ed. 1147; Mississippi Valley Barge Line Co. v. United States, supra (292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260)."

It is understood, of course, that we do not sit de novo in cases dealing with orders of the Commission. On the contrary, Congress has delegated exclusively to the Commission a wide latitude of discretion in determining public convenience and necessity. In Interstate Commerce Commission et al. v. Parker, 1945, 326 U.S. 60, 65, 65 S.Ct. 1490, 1492, 89 L.Ed. 2051, the Court said:

"Public convenience and necessity is not defined by the statute. * * The purpose of Congress was to leave to the Commission authoritatively to decide whether additional motor service would serve public convenience and necessity. Cf. Powell v. United States, 300 U.S. 276, 287, 57 S.Ct. 470, 476, 81 L.Ed. 643. This, of course, gives administrative discretion to the Commission, cf. McLean Trucking Co. v. United States, 321 U.S. 67, 87, 88, 64 S.Ct. 370, 380, 381, 88 L.Ed. 544, to draw its conclusion from the infinite variety of circumstances which may occur in specific instances. * * "

██ The hearings lasted for nine days and produced 1586 pages of testimony and 110 exhibits. There can be no question that the findings of the Commission were supported by substantial evidence.

The basic facts here involved are that on February 24, 1959, Capitol filed an application with the Commission seeking a certificate of convenience and necessity to operate as a motor common carrier over regular routes transporting passengers and their baggage, and express, mail and newspapers, in the same vehicle with passengers (1) between Wilkes-Barre, Pennsylvania, and Towanda, Pennsylvania, over U. S. Highway 309, and (2) between Waverly, New York and Elmira, New York, over New York Highway 17, serving all intermediate points on these routes. At the time of the application, Capitol possessed authority to transport passengers and their baggage, and news-

papers in the same vehicle with passengers between Waverly, New York, and Towanda, Pennsylvania, serving all points, and has been engaged in providing such service for some time.

Subsequent to the filing of the involved application, on December 7, 1959, Capitol consummated, with the approval of the Commission, a purchase transaction whereby it obtained authority to transport passengers and their baggage, but not express and newspapers, in interstate commerce, between Waverly, New York, and Binghampton, New York; between Binghampton, New York, and Ithaca, New York; and between Elmira, New York, and Waverly, New York. This authority authorized operations over New York State Highway 17 westbound from Waverly to within seven miles of Elmira where the route leaves Highway 17 and travels over State Highway 427 through Wellsburg into Elmira. Additionally, on March 14, 1960, Capitol was authorized by the Pennsylvania Public Utilities Commission to perform intrastate operations over the routes here involved between Wilkes-Barre, Pennsylvania, and points on the proposed routes to the Pennsylvania-New York State line. The total distance between the principal termini of Wilkes-Barre and Elmira is 103 miles. Of that distance only the 41 miles segment between Tunkhannock and Towanda represents the route which Capitol did not then have such interstate authority to serve which would duplicate the operating rights of Greyhound. Edwards does not serve any portion of the route involved in this proceeding.

Capitol has been engaged in the motor carrier business since 1936, and has been an active member of National Trailways Bus System since 1947. Trailways' broad aims are to enable member companies to compete more effectively with Greyhound's nation wide bus service.

Representatives of a number of carrier members of Trailways testified in the proceeding. These carriers joined in proposals to provide through bus service and testimony was introduced show-

ing the traffic which would move over the routes in question within the Trailways System which had heretofore been lost to Greyhound because of the absence of the through Trailways route. A total of sixty-seven public witnesses testified as to their need for the involved service, and, in addition, the general passenger agent of Lehigh Valley Railroad Company, which abandoned virtually all of its services in the involved territory, testified during the course of Capitol's direct case before the Commission.

The hearing examiner in his report served on March 21, 1960, recommended that the application be granted, plaintiffs filed exceptions and Capitol replied. On October 5, 1960, Division 1 of the Commission found:

"The evidence, the examiner's recommendations, the exceptions, and the reply have been considered. We find the statement of facts in the examiner's report to be correct, and we adopt it as our own."

After discussing the evidence and the principles involved, the Division further found:

"* * * that the present and future public convenience and necessity require operation by applicant, in interstate or foreign commerce, as a common carrier by motor vehicle, over regular routes, of passengers and their baggage, and of express and newspapers in the same vehicle with passengers, between Wilkes-Barre, Pa., and Elmira, N. Y., from Wilkes-Barre, over U. S. Highway 309 to Waverly, N. Y., thence over New York Highway 17 to Elmira, and return over the same route serving all intermediate points; that applicant is fit, willing, and able properly to perform such service and to conform to the requirements of the Interstate Commerce Act and our rules and regulations thereunder; * * *".

Our function here is not to weigh the evidence before the Commission; we are not permitted to substitute our independent judgment for that of the Commission on the question of the public need for the involved service. Our sole responsibility is to determine whether there is found to have been before the Commission evidence to support its finding that the present and future public convenience required Capitol's service. It is our opinion that there is ample evidence to support this finding.

■ The testimony of the public witnesses indicated the need for a through bus, daylight and round trip operation between Wilkes-Barre and Elmira. Not until after Capitol had completed its case in chief in this proceeding did Greyhound make any effort to provide this type of scheduled service. The service offered the public by a protesting motor carrier should be considered as that service provided at the time of the filing of the new application. Not having moved for years, Greyhound should not be permitted to wait until the filing of an application by a competing carrier to increase or improve its service.

Plaintiffs complain that the Commission's orders were not supported by definite and specific subordinate findings, and they contend that an ultimate finding in the statutory language is not enough.

■ We find no absolute requirement for, nor any particular virtue in, a mere formula which here would fall in the accustomed category of findings of fact. We do feel that from an abundance of credible testimony the Commission did reach its conclusions and did make its orders. The findings are therefore fully adequate to support the orders in this respect. United States et al. v. Pierce Auto Freight Lines, Inc., 1946, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821; Southern Kansas Greyhound Lines, Inc., et al. v. United States of America et al., 1955, D.C.W.D.Mo., 134 F.Supp. 502. As stated by the Court in Southern Kansas Greyhound Lines, Inc., et al. v. United States of America et al., supra (Page 507):

"'* * * the Commission is not required to make detailed findings of fact except in a case where damages are involved. Manufactur-

ers' R. Co. v. United States, 246 U.S. 457, 489–490, 38 S.Ct. 383, 62 L.Ed. 831. The ultimate findings required by law are only that the applicant is fit, willing and able to perform the proposed service and that the service will serve the public convenience and necessity, 49 U.S.C.A. § 909(c). Such findings were made here.' * * * "

The same is true in the instant case.

■ Plaintiffs contend that the existing facts and circumstances do not warrant the application of the close-the-gap principle. They also argue that in an earlier proceeding (Capitol's application Sub 7) the Commission rejected this principle as applicable hereto. Further reference to the Sub 7 proceeding will be made herein at a later point. Suffice it here to say that for reasons hereinafter stated the Commission's rulings in the prior proceeding are not in any sense binding upon it in the instant proceeding. On this matter the Commission stated:

"Applicant is presently authorized to operate between Washington and Wilkes-Barre, and between Elmira and Towanda, although not over the identical route involved here. Trailways System connections are available at Washington to points south thereof and at Elmira to Buffalo and Rochester. Thus there is a gap between Towanda and Wilkes-Barre in Trailways' service between Washington and Baltimore, on the south, and Elmira, Buffalo, Rochester, and other western New York points on the north. The result of this gap is that passengers who begin their journeys as Trailways' patrons must transfer to a Greyhound route at some time during their trip. Passengers from points south of Washington destined to points beyond Wilkes-Barre and Scranton will frequently transfer to a Greyhound route at Washington in order to avoid a second transfer at Scranton, thus depriving applicant of a number of passengers who would other-

wise complete their journey over the Trailways lines. In addition, New York Lines, the Trailways affiliate operating in western New York must necessarily find it difficult to compete for passengers traveling south of Towanda, as Greyhound is able to offer such passengers a through-bus service. If we were to deny applicant the right to close the gap in its operations between Wilkes-Barre and Towanda, we would, as we said in an earlier case, 'merely be hampering the development of a competing system of transportation for the sake of protecting a single carrier from some diversion of traffic.' Tri-State Transit Co. of La., Inc., Ext.—Jackson, Tenn., 29 M.C.C. 381, 402. It is true that a carrier can deliberately create such a situation by the acquisition of operating rights which, of themselves, are of little use because of their failure to connect with its other routes. It must be borne in mind, however, that the primary consideration here is the interest of the traveling public. We think it desirable to eliminate gaps such as that in applicant's routes where this can be done without resulting in a materially adverse effect upon existing carriers, and we believe that this is a factor to be taken into consideration, among others, in a case such as this."

The close-the-gap principle recognized in the Commission's report is given the approval of the Supreme Court in United States et al., v. Pierce Auto Freight Lines, Inc., et al., supra, 327 U.S. page 532, 66 S.Ct. page 696, Footnote 20, in connection with the Court's observation that "The Commission has recognized the value of reasonable competition."

The Commission stated in its report that the primary consideration involved in Sub 12 "is the interest of the traveling public". That its issuance of a certificate in Sub 12 was reasonably calculated to expedite through service between Capitol's northern and southern routes

and to eliminate inconveniences due to changes of terminals and layovers is, of course, implicit in its action. The Commission obviously felt that the missing link in Capitol's operations, not only on its own account but as a member of the Trailways system, operated to the distinct disadvantage of both interstate and intrastate travelers and aside from the inconvenience to the traveling public placed Capitol and its parent affiliate at a definite competitive disadvantage.

In Carolina Scenic Coach Lines v. United States et al., 1944, D.C.W.D.N.C., 56 F.Supp. 801, 803–804, in sustaining the action of the Commission, the Court said:

"We think there can be no question but that on these facts the order of the Commission was amply supported. What public convenience and necessity require in the premises is a matter which Congress has confided to the judgment of the Commission, and not of the courts, to determine. * * * And courts in reviewing orders made by the Commission in the exercise of the discretion reposed in it by Congress may not substitute their judgment for that of the Commission, nor may they set aside the orders unless they are made without substantial evidence to support them, involve error of law or are so manifestly arbitrary and unreasonable as to transcend the power conferred by statute. The well settled rule was thus stated by this Court in the recent case of Bondurant v. United States, D.C., 50 F.Supp. 704, 706:

" 'We cannot say that the Commission's findings are not supported by the evidence, that they involve any error of law or that they are so arbitrary or unreasonable as to amount to an abuse of discretion. This being true, the relief prayed for must be denied. "This court has no concern with the correctness of the Commission's reasoning, with the soundness of its conclusions, or with the alleged inconsistency with findings made in other proceedings before it". Virginia R. (Co.) v. United States, 272 U.S. 658, 665, 666, 47 S.Ct. 222, 225, 71 L.Ed. 463; Interstate Commerce Commission v. Union Pac. R. Co., 222 U.S. 541, 32 S.Ct. 108, 56 L.Ed. 308."

■ Plaintiffs seek to invoke the doctrine of res judicata for the reason that a previous application by Capitol Bus Company was denied. The previous application (No. MC-109736 (Sub 7)) was denied in Report dated May 28, 1958. The situation existing at that time is clearly stated by the Commission as follows:

"By application filed May 7, 1956, Capitol Bus Company of Harrisburg, Pa., seeks a certificate of public convenience and necessity authorizing operation, in interstate or foreign commerce, as a common carrier by motor vehicle of passengers and their baggage, and of express, mail, and newspapers in the same vehicle with passengers, between Scranton, Pa., and Elmira, N. Y., from Scranton over U. S. Highway 11 to Clarks Summit, Pa., thence over U. S. Highway 6 to Tunkhannock, Pa., thence over U. S. Highway 309 to Towanda, Pa., thence over U. S. Highway 220 to Waverly, N. Y., thence over New York Highway 17 to Elmira, and return over the same route, serving all intermediate points. * * *

"Applicant presently holds authority as a motor common carrier authorizing the transportation of passengers and their baggage, together with express and newspapers, (a) between Scranton and Baltimore, Md., generally over U. S. Highways 11, 309, 22, 15, and 140 by way of Pottsville, Harrisburg, York Springs, and Hanover, Pa., and Hampstead and Reisterstown, Md., serving all intermediate points, (b) between York Springs and Gettysburg, Pa., over U. S. Highway 15, serving all intermediate points, and (c) between Gettysburg and Wash-

ington, D. C., over U. S. Highways 15 and 240, serving no intermediate points. Subsequent to the hearing, it was authorized, in No. MC-F-6383, Capital Bus Co.—Purchase—Vallilee, 70 M.C.C.—(not printed in full), decided July 10, 1957, to acquire a certificate hereinafter referred to as the Vallilee rights, authorizing operations between Waverly, N. Y., and Towanda, Pa., over U. S. Highway 220, serving all intermediate points. This route is approximately 19 miles long and duplicates a part of the 120-mile route sought herein. * * "

The Commission would not, however, be estopped by its refusal to invoke the close-the-gap principle in the earlier Sub 7 proceeding. The Court of Appeals of this Circuit with regard to the issuance of a certificate of public convenience and necessity in Panhandle Eastern Pipe Line Company v. Federal Power Commission, 1956, 3 Cir., 236 F.2d 289, 292, held:

"In the first place the doctrine of res judicata can have no application to a proceeding, such as this, which involves a determination of the present or future public convenience or necessity with respect to the continuance or abandonment of natural gas service. For, as Judge Learned Hand said in a somewhat analogous situation in United States Feldspar Corporation v. United States, D.C.N. Y., 1930, 38 F.2d 91, 95, 'No estoppel is relevant upon that inquiry, no inconsistency important, except as it helps to ascertain the very truth; the inquiry is not to be assimilated to the ordinary suit inter partes where no more is at stake than the settlement of a private dispute.' * * * "

Cases cited by the plaintiffs are inapplicable here. The situation in Dixie Carriers Inc., et al. v. United States, 1956, D.C.S.D.Tex., 143 F.Supp. 844, 850, is summed up in its remarks that "the simple phrase 'and good cause appearing therefor' " is inadequate to upset prior positive findings, and (Page 854) "This is particularly so where, * * relief is first denied but, without any other or further showing, is then granted", but the Court there likewise conceded that "Courts and administrative agencies have, and must have, power to change their minds." In Hudson Transit Lines, Inc. v. United States et al., 1948, D.C.S.D.N.Y., 82 F.Supp. 153, the proceedings were reopened "for reconsideration on the record as made." The Court said: "The case is unusual in that upon the same record the Commission has reached two contradictory conclusions." In the present case the Commission was not, however, in the Sub 12 application holding a rehearing on the Sub 7 record but had before it an entirely new record based upon additional facts and changed conditions.[2]

2. While the "Vallilee" interstate rights covering the 19 miles from Waverly to Towanda had been acquired July 10, 1957, prior to the termination of the Sub 7 proceedings, Capitol had subsequently acquired the interstate rights of the L. D. Dickerson Motor Coach Co. which included the 17 miles between Elmira and Waverly and had acquired PUC Intrastate authority covering U. S. Highway route 309 from the New York State line through Towanda to Tunkhannock to Wilkes-Barre. Greyhound did not serve and had no rights in the 27 miles from Tunkhannock to Wilkes-Barre and the Sub 12 application did not include the Tunkhannock to Scranton portion of the Sub 7 application over U. S. Highway routes 6 and 11 traversed by Greyhound and in which Capitol held no operating rights either interstate or intrastate.

Moreover, at the time of the Sub 12 application, the Lehigh Valley Railroad Company had obtained permission to and had abandoned a considerable portion of its New York to Buffalo service which covered points on the route such as Tunkhannock and Towanda. The gap in the Sub 7 proceeding was from Scranton to Tunkhannock, a distance of 44 miles, thence to Towanda a distance of 41 miles, and then from Waverly to Elmira a distance of 16 miles, or a total for the two gaps of 101 miles. By way of contrast the Sub 12 proceeding involved two contiguous gaps, to wit: Wilkes-Barre to Tunkhannock, a distance of 27 miles, and from Tunkhannock to Towanda a distance of 41 miles, or a total for the two gaps of 68 miles, which was 33 miles less than the total mileage for the two gaps in Sub 7.

We accordingly conclude that the Commission acted within its statutory authority and that there is rational basis for its Order. Therefore, the complaint will be dismissed.