**COOPER MOTOR LINES, INC. and Laney Tank Lines, Inc., Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

and

**McLean Trucking Company, Akers Motor Lines, Inc., Carolina Freight Carriers Corporation, Central Motor Lines, Inc., Johnson Motor Lines, Inc., Mercury Motor Express, Inc., Pilot Freight Carriers, Inc., and R. C. Motor Lines, Inc., Intervening Defendants.**

Civ. A. No. 67–210.

United States District Court
D. South Carolina,
Columbia Division.

May 1, 1968.

Frank A. Graham, Jr., Columbia, S. C., and Beverley S. Simms, Washington, D. C., for plaintiffs.

Klyde Robinson, U. S. Atty., Wistar D. Stuckey, Asst. U. S. Atty., Columbia, S. C., and John E. Faulk, Interstate Commerce Commission, Washington, D. C., for defendants.

Carlisle Roberts, James W. Lawson, John W. Thomas, Columbia, S. C., and Jon F. Hollengreen, for intervening defendants.

Before HAYNSWORTH, Chief Judge, and HEMPHILL and RUSSELL, District Judges.

PER CURIAM.

Plaintiffs seek relief of this forum from a denial by the Interstate Commerce Commission of plaintiffs' application for approval of a purchase agreement. Cooper Motor Lines wishes to buy, for $73,-500, a described portion of Laney Tank Lines, Inc., certificate to transport certain commodities "between points and places in Kershaw County, South Carolina, on the one hand, and, on the other, points in North Carolina and Georgia." Incidental is a license restriction to truck loads of not less than 10,000 pounds. It affirmatively appears that proper administrative remedies have been exhausted.

A hearing before a single Hearing Examiner resulted in a favorable decision of approval.[1] The protesting carriers, intervenors in this action, filed exceptions, after which Division 3 of the Commission considered arguments thereon and by a vote of 2 to 1 disapproved in toto the Hearing Examiner's findings, and in lieu thereof found that the purchase would not be consistent with the public interest and denied the application.

---

1. As recommended by the Examiner's report and order.

A petition for reconsideration was denied and upon this administrative finality the issues were moved to the district court.

■■ Plaintiffs ask that the reports and orders of the Commission be enjoined and set aside as "arbitrary, capricious, an abuse of discretion, unsupported by and contrary to the substantial evidence of record, and otherwise not in accordance with law." This attack, and the scope of judicial review as set forth in section 10(e) [2] of the Administrative Procedure Act limit the inquiry of this court to those complaints. In appeals from decisions of the Interstate Commerce Commission, it is not the function of the reviewing court to act as a fact-finding body, but rather to determine whether the Commission's findings are supported by substantial evidence. Riss & Co., Inc. v. United States, 100 F.Supp. 468 (W.D.Mo.1951) affirmed 342 U.S. 937, 72 S.Ct. 559, 96 L.Ed. 697, rehearing denied 343 U.S. 937, 72 S.Ct. 769, 96 L.Ed. 1344. If a rational basis for the conclusions of the Commission exists, its decision will not be disturbed. Interstate Commerce Commission v. Jersey City, 322 U.S. 503, 513, 64 S.Ct. 1129, 88 L.Ed. 1420 (1944). The function of reviewing courts, as expressed by the court in Edwards Motor Transit Company v. United States of America, 201 F.Supp. 918, at 922 (M.D.Pa.1962), is that:

Our function here is not to weigh the evidence before the Commission; we are not permitted to substitute our independent judgment for that of the Commission on the question of the public need for the involved service. Our sole responsibility is to determine whether there is found to have been before the Commission evidence to support its finding * * *.

We examine the record here in the light of this principle.

■■ Plaintiffs are faced with the burden [3] of proving to the Commission, that the proposed transaction is consistent with the public interest. N. Y. Central Securities Corp. v. United States, 287 U.S. 12, 25, 53 S.Ct. 45, 77 L.Ed. 138 (1932).[4] They are met at the threshold with the obstacle of dormancy and the resulting responsibility to make an affirmative showing as to the extent of past service so that the Commission may be properly advised in order for it to determine whether and to what extent approval would result in the institution of a new service and possible consequential adverse effect upon "existing adequate" [5] service. Essential to this consideration is the impact of the proposal in the interests of competing carriers, shippers, and consignees.

■ Plaintiffs must, therefore, satisfy the Commission that the past service

2. 5 U.S.C. § 1009 provides: SCOPE OF REVIEW.—So far as necessary to decision and where presented the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provision, and determine the meaning or applicability of the terms of any agency action. It shall * * * (B) hold unlawful and set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; (5) unsupported by substantial evidence in any case subject to

the requirements of sections 7 and 8 or otherwise reviewed on the record of an agency hearing provided by statute; or (6) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court. * * *

3. 5 U.S.C.A. § 1006(c).

4. [T]he term "public interest" * * * is not a concept without ascertainable criteria, but has direct relation to adequacy of transportation service, to its essential conditions of economy and efficiency, and to appropriate provisions and best use of transportation facilities. * * *

5. We use the term "existing adequate" service here as there is no serious contention of existing inadequacy of service.

was substantial, both as to territory and commodities. This they have not done, as the Commission found; as to Laney's service under the rights for sale:

Vendor's showing of service under the rights sought to be transferred is encompassed wholly within exhibits 7 and 8, introduced at the hearing. Exhibit 7 shows a total of 59 shipments, all received in interchange at Camden (Kershaw County), S. C., moving from northern points, destined to 24 separate points in Georgia, between the dates of March 1 and September 1, 1964. A large variety of commodities are included. No shipments were shown on this abstract moving from Georgia to northern points in either Georgia or North Carolina. The purchase contract herein was dated September 11, 1964. Exhibit 8 is a larger but similar abstract of shipments transported between September 1, 1964 and August 1, 1965, except that 56 of the 224 shipments shown, beginning on September 23, 1964, were from Clarksville, Ga., to Fall River, Mass. All of these northbound shipments were of a single commodity. Clarksville is located in the extreme northeast corner of Georgia and only a few miles from the South Carolina line. It is clear that even if all of these shipments may be considered, vendor has not met the test of substantiality, either territorially or commoditywise, on northbound shipments.

And:

But more important than just the number and direction of the shipments in this case is the nature thereof. Protestants claim that nearly all of vendor's shipments are actually those of other carriers. We think that applicants' case in this respect is not as clear as it should have been, for on the evidence of record, the inference is not rebutted that all of vendor's shipments were solicited, originated, and delivered to destination by other carriers in their trucks after pausing at certain places to execute perfunctory lease agreements. Certainly the wit-

ness for vendor, its president and dominant stockholder, appeared generally unfamiliar with and somewhat confused in describing the nature of the operations. We are forced to conclude that the operations advanced by vendor as its own were actually those of several other carriers who proceeded from northern points to destinations in Georgia, ostensibly under vendor's control from South Carolina, in return for which vendor received a portion of the revenues and as to which it otherwise expressed little or no concern. If this is not the case, certainly vendor has not met its burden of showing that it was otherwise. In addition, there remains some doubt as to the propriety of vehicle inspection at the interchange points.

This court finds a substantiality of evidence, in the record, to support these findings:

The Commission concluded:

We conclude that applicants have not met their burden of proof in showing that the operations upon which they rely to establish an active and continuous service were actually those of the vendor. Nor does it appear that any public need has been shown for the operation of vendor's operating rights in the hands of vendee. No testimony of the shippers was offered. Moreover, the traffic from which vendor has derived its revenue on these particular operations is controlled by others and would not be available to vendee. Thus the traffic vendee could move upon approval would necessarily be new traffic or diverted from other carriers. On the basis of the record made, the transaction herein contemplates the sale of bare operating rights rather than those with active going concern value, and their use in combination with the rights of vendee would result in the institution of a new competitive service to the detriment of existing carriers for which no public need is evident.

We find that the transaction as presented has not been shown to be con-

sistent with the public interest and accordingly should be denied.

This court finds no error in the findings of the Commission. The prayer of the complaint is stricken and judgment ordered for defendants.

Action dismissed.